BOSTON AND ALBANY RAILROAD COMPANY *vs.* WALTER
SHANLY & others.

THOMAS CARNEY *vs.* SAME.

One who knowingly delivered an apparently harmless package, containing a dangerous and explosive substance, to a common carrier for transportation, without giving him notice of its contents, is liable for damages caused by its explosion while the carrier was transporting it in ignorance of its contents and with care duly adapted to its apparent nature.

Two substances, manufactured by different manufacturers, were dangerously explosive in combination with one another, and were ordinarily used together. A customer sent separate orders to the manufacturers for quantities of the respective substances to be forwarded to him by a certain common carrier; and directed one of them to make the substance which he was to furnish of greater explosive power than usual. The orders were fulfilled, and the substances delivered in apparently harmless packages to the carrier, by the manufacturers, each of whom acted independently of the other and was ignorant of the other's proceedings; and no notice was given to the carrier of the nature of the substances or either of them. He stowed them together in his vehicle; and while he was transporting them with due care they exploded, and injured his property and property of others in his custody, and also property of a third person near which the vehicle was standing. The explosion was practically a single one, and it was impossible to distinguish how much of the damage was produced by either substance. *Held,* that the manufacturers, but not the customer, were jointly liable to the carrier and the third person respectively, in actions of tort for their injuries.

In an action of tort for injuries occasioned to the plaintiff by the explosion in the vehicle of a common carrier of substances which the defendants had negligently delivered to him for transportation without notice of their dangerous nature, an allegation in the

writ, that the action is brought for the benefit of the carrier, raises no presumption that negligence of the carrier contributed to the plaintiff's injuries, and may be rejected as surplusage; and a description in the declaration of the injuries as consisting in the destruction of "a certain building and other property of great value, belonging to the plaintiff" and situated near where the vehicle was standing at the time of the explosion, is a sufficiently definite allegation of damage.

THE FIRST CASE was an action of tort against Walter Shanly and Francis Shanly, of North Adams; Hugo Dittmar, Carl Dittmar and Gottlieb F. Burkhardt of Boston; the Oriental Powder Company, a corporation having a usual place of business in Boston; and William H. Jackson, Ezra F. Newhall, Julius Smith and Peter Hinds, of Boston.   Writ dated August 8, 1870.

The first count in the declaration alleged that the plaintiffs were a corporation, and owned a railroad, and were common carriers, between Boston in Massachusetts and Albany in New York and intermediate towns, and were also lessees of a railroad, and common carriers, between the town of Pittsfield, which was situated on the first named railroad, and North Adams, another town in Massachusetts; "that said Dittmars and Burkhardt manufactured for said Shanlys at their request, as well as for other persons, a new, dangerous, explosive, combustible and inflammable compound, recently discovered and manufactured, called by a new name, not generally known, now [new?] in the market, and the qualities were and are not generally known, made in part of nitro-glycerine, itself an exceedingly dangerous, explosive and combustible substance; that the said Oriental Powder Company and the said Jackson, Newhall, Smith and Hinds, officers or agents of said company, also manufactured for said Shanlys at their request, as well as for other persons, certain dangerous articles or contrivances called exploders, designed to be used, and used, to set on fire and explode said new compound; and that said Shanlys, well knowing the dangerous character and qualities of said new compound and of said exploders, ordered and requested said Dittmars and Burkhardt to send a large quantity of said new compound, and also ordered and requested said Oriental Powder Company, and its said officers and agents, to send a quantity of said exploders, to them at said North Adams, and for their use, in the cars and over said railroads of the plaintiffs, but gave

no notice or information in regard to said new compound or ex-
ploders, or as to the dangerous character and qualities of either,
to the plaintiffs."

It further alleged " that said Dittmars and Burkhardt packed,
and caused to be packed, not in a proper or safe, but in an im
proper, unsafe and dangerous manner, a large quantity, to wit,
ten cases, of said new compound, to be sent to said Shanlys, over
the said railroads and in said cars, in accordance with said order
and request, and delivered the same to the plaintiffs, well know
ing that the same were dangerous as aforesaid. as ' Ten cases of
dualin,' a new name not known in the market, nor generally
known, which the plaintiffs aver neither they, nor the persons
employed in their behalf to receive or transport goods for them as
common carriers, knew, or could reasonably be expected to know,
were of a dangerous nature or were not properly packed, and
without giving due and sufficient notice to the plaintiffs or said
persons that the same were of a dangerous nature, but on the
contrary declaring and averring that they were safe and not of a
dangerous nature, so that said plaintiffs and persons neither could
exercise the option to refuse to accept and carry the same, nor if
accepted stow and carry the same so as not to endanger or injure
persons or property ; " and also that the Oriental Powder Com-
pany, and its said officers and agents, packed, and caused to be
packed, in an improper, unsafe and dangerous manner, two hun-
dred pounds of said exploders in a box, to be sent to the Shanlys
at North Adams, in accordance with their request, over the said
railroads and in said cars, and, well knowing that the same were
dangerous as above alleged, delivered them to the plaintiffs as
" One box," which (in the same words as the like allegations re-
lating to the dualin) neither the plaintiffs nor their employees
knew, or could reasonably be expected to know, were of a dan-
gerous nature or improperly packed, and without giving the
plaintiffs notice of the dangerous nature of the package, but de-
claring on the contrary that it was safe, and so preventing the
plaintiffs from using their option to refuse to carry it, and from
taking precautions in stowing and carrying it, if they should ac-
cept it for transportation.

It finally alleged " that said new compound and said exploders, being in their nature dangerous, combustible and inflammable as aforesaid and being improperly packed as aforesaid, did by reason of such nature and such improper packing take fire and explode ; that said exploders, so taking fire and exploding, did cause said dualin to take fire and explode, and said dualin, taking fire and exploding, caused said exploders to take fire and explode ; that the taking fire and explosion of said exploders, and the taking fire and explosion of said dualin, both separately and by the combination thereof, destroyed sundry cars and other property belonging to the plaintiffs, as well as a large amount of goods in said cars, in their care and possession, for the safe delivery of which the plaintiffs were responsible to the shippers thereof, and to whom they have been obliged to make and have made good the loss ; " and also " that by said explosion great damage and injury was caused to other property and persons, for which it is claimed that the plaintiffs are liable and obliged to pay, and so the plaintiffs aver that, if they are so liable and obliged to pay, the defendants are bound to indemnify and protect them against such claims, and to pay them whatever they have paid or shall pay thereon or therefor."

A second count was as follows : " And the plaintiffs further say that said Shanlys wrongfully requested said Dittmars and Burkhardt to prepare and manufacture a quantity of said new compound in an unusually dangerous manner, more explosive and powerful than that they had previously made or ought to make the same, and that the same should be sent to them, the said Shanlys, on said railroads and cars, and requested said other defendants to manufacture and forward to them on said roads and cars a quantity of said exploders ; and that said Dittmars and Burkhardt did accordingly negligently and wrongfully manufacture the said dualin in said negligent and improper manner, and said other defendants did accordingly manufacture said quantity of said exploders, and both and each delivered said dualin and exploders respectively to be carried as aforesaid on said road and cars, packed as aforesaid, to said plaintiffs ; and that said dualin and said exploders did each and both take fire and explode by

**reason** of said manufacture and packing, and did each respect-ively cause the other to explode, and such explosion did destroy and injure property as aforesaid to the damage of the plaintiffs."

The Shanlys demurred to the declaration, on the grounds (1) that it did not in either count thereof state a legal cause of action substantially in accordance with the rules contained in the Gen. Sts. *c.* 129; (2) that no joint tort of the defendants was alleged, but the allegations showed that the several defendants, in the acts attributed to them respectively, acted independently of others of the defendants; (3) that the allegations showed that the injury was occasioned by negligence in which these defendants did not participate; and (4) that the allegations of damage were too indefinite. The Dittmars and Burkhardt jointly filed a like demurrer.

The Oriental Powder Company demurred, on the grounds (1) that no joint tort of all the defendants was alleged, but on the contrary it appeared from the declaration that the torts com-plained of were several of the several defendants; (2) that no cause of action was alleged against these defendants; (3) that the allegations showed that the plaintiffs' own acts and negligence caused or contributed to the damage. Jackson, Newhall, Smith and Hinds severally filed like demurrers.

The case was thereupon reserved by *Gray*, J., for the deter-mination of the full court; if the demurrers should be overruled, the defendants to answer over; if sustained, judgment to be ren-dered for the defendants, unless the court should be of opinion that it is reasonable that the plaintiffs should be allowed to amend.

THE SECOND CASE was also an action of tort against the same defendants, and was expressed in the writ to be brought in the name of Thomas Carney "for the benefit of the Boston and Al-bany Railroad Company, assignee." The declaration, in its first count, contained allegations like those above recited from the first count of the declaration in the other case, down to the final allega-tion thereof, and concluded thus :

" And the plaintiff further says that in the said city of Worces-ter, through which, as the defendants well knew, said first men

tioned railroad [that is to say, the railroad from Boston to Albany] passes, there were situated near by said railroad a certain building and other property of great value belonging to the plaintiff; and that said new compound [that is to say, the dualin] and said exploders, being in their nature dangerous, combustible and inflammable as aforesaid, and being improperly packed as aforesaid, did by reason of such nature and improper packing take fire and explode; that said exploders so taking fire and exploding did cause said dualin to take fire and explode, and said dualin taking fire and exploding caused said exploders to take fire and explode; and that the taking fire and explosion of said exploders, and the taking fire and explosion of said dualin, both separately and by the combination thereof, damaged and destroyed said building and other property."

A second count was added in general terms like those of the second count in the first case, varied only by limiting the allegations of damage to the plaintiff's property.

The defendants demurred to the declaration, and the case was heard by *Gray*, J., and reserved by him in the same terms as the former case for the determination of the full court. The substance of the demurrer appears in the opinion. The two cases were argued together.

*C. Allen*, for the Shanlys, besides cases referred to in the opinion, cited *Lamb* v. *Crafts*, 12 Met. 356; *Gardner* v. *Joy*, 9 Met. 177; Addison on Torts (3d ed.) 16, 393–395, 407, 451, 455, 456; *Butler* v. *Hunter*, 7 H. & N. 826; *Sadler* v. *Henlock*, 4 El. & Bl. 570, 578; *Reedie* v. *London & Northwestern Railway Co.* 4 Exch. 244; Bell on Sale, 84–89; 2 Kent Com. (6th ed.) 500; Story on Sales (4th ed.) §§ 305, 388, 390; Brown on Sale, §§ 523, 525, 526; Benjamin on Sale, 515; *Judson* v. *Western Railroad Co.* 4 Allen, 520; *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263, 275; *Clarke* v. *Hutchins*, 14 East, 475; *Buckman* v. *Levi*, 3 Camp. 414; *Finn* v. *Clark*, 10 Allen, 479, and 12 Allen, 522; *Finn* v. *Western Railroad Co.* 102 Mass. 283; *Coombs* v. *Bristol & Exeter Railway Co.* 3 H. & N. 1, 6, *Hudson* v. *Baxendale*, 2 H. & N. 575; Addison on Contracts (6th ed.) 470, 480; *Wood* v. *Cobb*, 13 Allen, 58; *Forsyth* v.

*Hooper*, 11 Allen, 419, 421; *Brackett* v. *Lubke*, 4 Allen, 138 *Linton* v. *Smith*, 8 Gray, 147; *Hilliard* v. *Richardson*, 3 Gray 349; *Coomes* v. *Houghton*, 102 Mass. 211; *Quarman* v. *Burnett*, 6 M. & W. 499, 510, 511; *Milligan* v. *Wedge*, 12 Ad. & El. 737, *Rapson* v. *Cubitt*, 9 M. & W. 710, 713; Story on Agency (7th ed.) § 452; *Herne* v. *Garton*, 2 El. & El. 66; *Pierce* v. *Winsor*, 2 Sprague, 35; *S. C.* 2 Clifford, 18; *Walker* v. *Jackson*, 10 M. & W. 161; St. 1871, *c.* 6, § 2; *Putnam* v. *Tillotson*, 13 Met. 517; *Merchants' National Bank* v. *Bangs*, 102 Mass. 291, 295 · *Gilman* v. *Eastern Railroad Co.* 10 Allen, 233, and 13 Allen, 433; *Felch* v. *Allen*, 98 Mass. 572; *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466; Smith on Mast. & Serv. (3d ed.) 107, 108; Story on Agency, §§ 207, 308; *Albro* v. *Jaquith*, 4 Gray, 99; Met. Con. 11; *Parsons* v. *Winchell*, 5 Cush. 592; *Hewett* v. *Swift*, 3 Allen, 420; *Campbell* v. *Phelps*, 1 Pick. 62.

*G. Sennott*, (*T. L. Nelson* with him,) for the Dittmars and Burkhardt.

*J. W. Perry*, (*W. C. Endicott* with him,) for the Oriental Powder Company, and for Jackson, Newhall, Hinds and Smith, besides cases referred to by other counsel and in the opinion, cited Gen. Sts. *c.* 88, § 50; *Adams* v. *Hall*, 2 Verm. 9; *Williams* v. *Sheldon*, 10 Wend. 654; *Guille* v. *Swan*, 19 Johns. 381; *Coryton* v. *Lithebye*, 2 Saund. 117; *Carter* v. *Towne*, 103 Mass. 507; *Tutein* v. *Hurley*, 98 Mass. 211; *Davidson* v. *Nichols*, 11 Allen, 514; *Thomas* v. *Winchester*, 2 Selden, 397; *Flower* v. *Adam*, 2 Taunt. 314; *Thorogood* v. *Bryan*, 8 C. B. 115; *Lockhart* v. *Lichtenthaler*, 46 Penn. State, 151; *Cleveland, Columbus & Cincinnati Railroad Co.* v. *Torry*, 8 Ohio State, 570; *Puterbaugh* v. *Reasor*, 9 Ohio State, 484; *Brown* v. *New York Central Railroad Co.* 31 Barb. 385; *Smith* v. *Smith*, 2 Pick. 621.

*G. S. Hale*, for the plaintiffs, besides cases referred to by other counsel and in the opinion, cited St. 29 & 30 Vict. *c.* 69, § 6 · *Longmeid* v. *Holliday*, 6 Exch. 761, 767; *Hutchinson* v. *Guion*, 5 C. B. (N. S.) 149; *Penton* v. *Murduck*, 22 Law Times (N. S.) 871; *Illidge* v. *Goodwin*, 5 C. & P. 190; *Lynch* v. *Nurdin*, 1 Q. B. 29; *Colegrove* v. *New York & New Haven Railroad Co.* 20 N. Y. 492; *Hawkesworth* v. *Thompson*, 98 Mass. 77; *Eaton* v

*Boston & Lowell Railroad Co.* 11 Allen, 500, 505; *Robinson* **v.** *Vaughton*, 8 C. & P. 252; *Scott* v. *Hunter*, 46 Penn. State, 192; Dicey on Parties, 87, 440; *Griffith* v. *Ingledew*, 6 S. & R. 429, 437; Powell on Carriers (2d ed.) 207, 208; Angell on Carriers, §§ 495, 497, 499; *Blanchard* v. *Page*, 8 Gray, 281; *Abbott* v. *Macfie*, 2 H. & C. 744; Sedgwick on Damages (5th ed.) 109; *Dixon* v. *Bell*, 1 Stark. 287; *Richardson* v. *Chasen*, 10 Q. B. 756.

CHAPMAN, C. J.    The first case comes before us upon a demurrer to the plaintiffs' declaration.    The action is against Walter and Francis Shanly, of North Adams; Hugo and Carl Dittmar and Gottlieb F. Burkhardt, of Boston; the Oriental ᐧPowder Company, a corporation established in Boston; and Jackson, Newhall, Smith and Hinds, of Boston, the officers or agents of the company.    The first count alleges that the plaintiffs are common carriers between Boston and North Adams, upon their own railroad from Boston to Pittsfield, and thence to North Adams upon the Pittsfield and North Adams Railroad, of which they are lessees; that said Dittmars and Burkhardt manufactured for said Shanlys, at their request, as well as for other persons, a new, dangerous, explosive, combustible and inflammable substance, called by a new name, not generally known, (but afterwards called dualin in the declaration,) now in the market, and the qualities not generally known, and made in part of nitro-glycerine, which is itself an explosive and dangerous substance; that the Oriental Powder Company, and its said officers and agents, also manufactured for the Shanlys, at their request, as well as for other persons, certain dangerous articles, called exploders, designed to be used for exploding said new compound; that the Shanlys, knowing the dangerous character of said compound and of said exploders, ordered and requested said Dittmars and Burkhardt to send to them at North Adams, in the plaintiffs' cars, a quantity of said compound, and ordered and requested the said Oriental Powder Company to send them in the same way a quantity of said exploders, but gave no notice to the plaintiffs of the dangerous character of either of said articles; that the Dittmars and Burkhardt sent ten cases of the compound, and delivered them to the plaintiffs as ten cases of dualin, knowing them to be

of a dangerous character, but did not give notice to the plaintiffs, nor did the plaintiffs know, of their dangerous character, but the Dittmars and Burkhardt declared that they were safe and not of a dangerous character; that the Oriental Powder Company, and their said officers and agents, sent two hundred pounds of exploders accordingly, but packed them in an improper and dangerous manner, and gave the plaintiffs no notice of their dangerous character, but delivered them as "one box," and the plaintiffs did not know of their dangerous character; that the dualin and exploders did by reason of their nature and improper packing take fire and explode, and the exploders taking fire and exploding caused the dualin to explode, and this taking fire and exploding, both separately and by the combination thereof, destroyed sundry cars and other property of the plaintiffs, and other goods which they had as carriers and for which they were liable to pay.

Both the dualin and the exploders are thus alleged to be explosive and dangerous articles. Each of them was sent without giving notice of its character to the plaintiffs, and they were ignorant in respect to it. The rule of law on this subject is in conformity with the dictates of common sense and justice, and is well established. One who has in his possession a dangerous article, which he desires to send to another, may send it by a common carrier if he will take it; but it is his duty to give him notice of its character, so that he may either refuse to take it, or be enabled, if he takes it, to make suitable provision against the danger. The reason for requiring this notice is still stronger, if other persons would be exposed to danger from it; but the duty is the same. This principle is established in application to the sending of goods by carriers, in *Williams* v. *East India Co.* 3 East, 192. See also *Brass* v. *Maitland*, 6 El. & Bl. 470, and *Farrant* v. *Barnes*, 11 C. B. (N. S.) 553. The duty does not arise from any contract, express or implied, but from the principle expressed in the maxim *Sic utere tuo ut alienum non lædas.* The principle is held by this court in its broadest signification. In *Carter* v. *Towne*, 98 Mass, 567, it was held that a trader who sold gunpowder to a boy, eight years of age, who had no knowledge or experience in the use of it and was unfit to be intrusted with it and

injured himself afterwards by its explosion, was liable to an action for the damage. In *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64, an action was maintained against a retailer of fluids for knowingly selling naphtha, a dangerous article, to b.· burned in a lamp, the plaintiff being ignorant of its qualities There are numerous cases which sustain this principle in variour forms, but these are sufficient for its illustration.

This principle is not changed by the alleged fact that the Shanlys requested the Dittmars and Burkhardt to manufacture a quantity of the dualin in an unusally dangerous manner, and that they did so manufacture it. If it was a dangerous article, the duty of the sender was to give the notice ; and if it was so in an unusual degree, that fact only made the duty more important.

But assuming that these parties were guilty of a violation of duty as alleged, it is yet contended that the manufacturers of the dualin and the manufacturers of the exploders cannot be joined in one action for the injury. It is not alleged that these parties acted in concert in making the several articles, or placing their respective articles in the plaintiffs' care, nor even that they had knowledge of each other's proceedings. Each acted separately in sending goods, and omitting to give notice. But each party violated his duty none the less because he was ignorant as to what other articles were to be carried in the same car with his. By neglecting to give the notice, he took the risk of any danger that might reasonably be apprehended from the proximity of other goods that the carriers might take in ignorance of the danger. If, as the declaration imports, dualin and exploders are ordinarily used together, any person sending either of the two substances might reasonably apprehend the possibility that a quantity of the other substance might be carried with it. Nor is it material which of the articles caused the other to be ignited. Practically a single injury was produced, and it is impossible to distinguish how much of it was actually produced by the exploders and how much by the dualin.

The defendants cite a remark of Chief Justice Shaw in *Marble* v. *Worcester*, 4 Gray, 395, 397, which, if they interpret it correctly, would leave a wrongdoer to injure others with impunity if other

wrongdoers were guilty of independent acts that contributed to produce the same injury. But the chief justice himself applied the remark to the case before him, which was an action upon a statute, against a town ; and the case is to be limited in its application to actions against towns. *McDonald* v. *Snelling*, 14 Allen, 290.

They also contend that the case is like those where it is held that a joint action will not lie against the several owners of dogs which have together worried a flock of sheep, each owner being separately liable for the damage done by his own dog. *Budding-ton* v. *Shearer*, 20 Pick. 477. *Van Steenburgh* v. *Tobias*, 17 Wend. 562. *Auchmuty* v. *Ham*, 1 Denio, 495. *Russell* v. *Tom-linson*, 2 Conn. 206. But in such cases there is no concurrence of intent or action among the several owners of the animals in producing the same injury. A person's responsibility for the act of his dog arises from the fact of ownership, and rests on a different ground from that of his responsibility for the physical action of a chemical or mechanical substance prepared and sent by him, or of a nuisance which he has placed so that it will occasion injury to others. His act is the direct cause of the injury done by such means. In this case, the acts of the parties who wrongfully sent the dangerous substances were contributory to the catastrophe, as much as if they had separately contributed to the raising of a pile of offal which occasioned an offensive odor, or had at one time separately fired a building by distinct torches, each of which contributed to a conflagration of the whole. It cannot be, that, because the several wrongdoers have so contributed to the injury that it is impossible to distinguish what portion of it was caused by each, therefore they can escape with impunity. On the contrary, each is liable for the whole. The case is similar to *Stone* v. *Dickinson*, 5 Allen, 29, and 7 Allen, 26, where several creditors of Stone brought actions against him, and each caused him to be imprisoned for the same space of time. The injury being one, it was held that, though there had been no concert between them, he could maintain one action against all, and each was liable for the whole damage. The same doctrine was held in *Ellis* v. *Howard*, 17 Verm. 330.

The many ways in which wrongdoers may injure another give rise to some nice distinctions; but when their several acts directly contribute to produce a single injury, each being sufficient to have caused the whole, and it is impossible to distinguish the portions of injury caused by each, that concurrence ought to render each of them liable for the whole in a joint action. On this ground, the manufacturers who sent the articles are jointly liable in this action.

The liability of the Shanlys depends upon their concurrence in the tortious acts of the other defendants. The declaration cannot be fairly construed as alleging that the manufacturers were their servants or agents. It is alleged that they were manufacturers of the dangerous articles for the Shanlys and others. The allegation, that the Shanlys ordered and requested each of them to send a specified quantity of these articles to them by the plaintiffs' railroad, imports an order from a purchaser, such as is usually given by purchasers to manufacturers. If the articles were required in the order to be of unusual strength, this is not unlike an order for spirits of unusual strength, or cloths of unusual weight or fineness or peculiar color, and does not change the nature of the transaction. Nor does it imply a request that the goods should be carelessly or improperly packed, or that there should be any neglect to give such notices to the carriers as would be proper. If nothing was said on these subjects, it would be implied that the packing and whatever else was proper, including notices and directions, should be properly attended to.

It being the duty of the senders to give proper notice of the character of the goods to the carrier, the question arises whether it was also the duty of the consignee to give such notice. There is no authority for holding him to be thus liable, and it would be useless and unreasonable to require it of him. It should be given at or about the time of offering the goods to the carrier. The consignee is not likely to know the time, especially if he lives at a distance; nor is he likely to know what articles may be sent together; nor is there any occasion to send an additional notice, it being the duty of the consignor to give notice. In this case, it is not alleged that the Shanlys requested the consignors to

neglect any duty or conceal any facts, and there is no ground to hold them responsible for the negligence or improper conduct of the other defendants.

*Demurrer sustained as to the Shanlys, and overruled as to the others.*

The writ in the second case contains two counts. The first alleges the same wrongful acts which are set forth in the action of the Boston and Albany Railroad Company against these defendants. Its additional allegations are, that the railroad passes through the city of Worcester; that the plaintiff had, as the defendants well knew, a building and other property of great value situated near by the railroad in that city; and that the said dangerous articles took fire and exploded, and damaged and destroyed the said building and other property. The second count is general, but it is not necessary to refer to it more particularly.

The case comes before us on the several demurrers of the defendants to the declaration.

The first cause of demurrer assigned by the Oriental Powder Company is removed by an amendment of the second count, which charges all the defendants. The second ground assigned by them is, that these defendants are joined in an action of tort with other defendants, and no joint tort of all the defendants is alleged. This ground is disposed of by the principle stated in the case of the Boston and Albany Railroad Company against the same defendants.

The third cause assigned is, that no cause of action is alleged against these defendants. The alleged cause of action is, that these defendants caused dangerous and explosive articles to be carried by the railroad near to the plaintiff's building, where they exploded, and thereby injured the plaintiff's property. Such an injury is tortious and actionable, whether it is done wilfully or negligently.

The fourth cause alleges that it appears from the plaintiff's writ and declaration that the plaintiff has received full compensation for all the damages suffered by him, and that the Boston and Albany Railroad Company have paid him and sue in his name to recover back the amount so paid by them; and the defendants

show that if the Boston and Albany Railroad Company have paid said damages to the plaintiff, it was because their negligence had rendered them liable to pay him, and if they were negligent and liable to pay him he cannot maintain this action. This statement includes an alleged cause of demurrer and an argument. It is sufficient to say, in respect to it, that the writ merely alleges that the action is brought for the benefit of the Boston and Albany Railroad Company as assignees. This does not imply any fault or liability on the part of the assignees. The assignment may have been made for a variety of reasons. The allegation in the writ is mere surplusage. It can only operate as a notice of such equitable rights as the assignment may confer. Nor is the allegation in the writ mentioned as a cause of demurrer.

The fifth cause alleges that it appears from the writ and declaration, that the acts and negligence of the Boston and Albany Railroad Company, in whose behalf this action is prosecuted, caused or contributed to the damage complained of. We find no such allegation ; but on the contrary it is alleged that they had no notice or knowledge of the dangerous character or of the improper packing of the articles.

In addition to these causes, the defendants Burkhardt and Dittmar allege that the allegation of damage is too indefinite. But each of the counts alleges what damage was caused by the wrongful acts ; and though the statement is very general, it is sufficient to sustain an action.

The Shanlys demur on several grounds, one of which is that no cause of action is alleged against them. For reasons stated in the case of the Boston and Albany Railroad Company against them, this cause must be sustained.

*Demurrer of the Shanlys sustained : demurrers of the other defendants overruled.*