DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

### September, 1876.

---

## REUBEN R. SPAN, Appellant, v. HENRY O. ELY, Respondent.

### *Liability of master, for injuries to servant.*

The defendant, a physician, attended a woman who died of small pox and subsequently employed the plaintiff to whitewash the house in which the death occurred. The plaintiff, who knew that the woman had died of small pox, entered and whitewashed the house, relying upon the assurances of the defendant that the house had been thoroughly disinfected, and that he would be entirely safe in so doing. Plaintiff having contracted the disease in the house, subsequently brought this action to recover the damages sustained thereby. *Held* (1), that the relation between the parties was that of master and servant; and (2), that the plaintiff was entitled to recover in case the jury should find on all the facts, that the plaintiff did not act rashly and inexcusably in entering the house under the employment; and further, that the defendant had not conducted towards the plaintiff with due care and prudence.

The liability of a master for injuries sustained by the servant in the course of his employment, considered.

APPEAL by the plaintiff from a judgment of nonsuit, and also from an order denying a motion for a new trial, made on the judge's minutes.

*Edward K. Clark,* for the appellant.

*E. O'Connor* and *W. J. Ludden,* for the respondent. In actions brought by a servant against his master for negligence, the burden of

proof, as to the master's knowledge or culpability in lacking knowledge, rests upon the plaintiff. (*Kunz* v. *Stewart*, 1 Daly, 431; *McMilland* v. *Saratoga, etc., R. R. Co.*, 20 Barb., 449; Shearman & Redfield on Negligence, § 99; *Buzzell* v. *Laconia Mfg. Co.* 48 Maine, 113.) In all cases in which it is necessary to prove a *scienter*, in order to sustain the action, the complaint, to be good, must allege such *scienter* or knowledge on the part of the defendant. (Van Santvoord's Pl., 286; 1 Chitty Pl., 403, and 3 Dowl., 769.) Knowledge on the part of the defendant of the danger and risk, is the gist of the action. (*Looman* v. *Rockaway*, 28 How., Pr., 472; 25 N. Y., 566.) The plaintiff knew the condition of the house, and voluntarily assumed the risk, whatever it was, with full knowledge of its extent, and consequently had no cause of action. (*Bird* v. *Holbrook*, 15 Eng. Com. Law Rep., 91, 93–96; *Loomis* v. *Terry*, 17 Wend., 498, 499; *Hartfield* v. *Roper*, 21 id., 618, 619; Shearman & Redfield on Negligence, § 88; 30 Barb., 229; 5 Ohio St., 541; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 567, 568; *Ryan* v. *Fowler*, 24 N. Y., 416; *Cruty* v. *Erie Railway Co.*, 3 N. Y. S. C., 245.)

BOOKES, J.:

For the purpose of this appeal, the following may be assumed as the facts of the case, to wit: 1. That the defendant employed the plaintiff to whitewash a house in which one Fanny Davis had recently died of the small pox. 2. That the defendant was a physician and attended such person during her sickness and until her decease, and knew that she had such contagious disease, and that she died of it. 3. That he assured the plaintiff that the house had been thoroughly disinfected, and that he would be entirely safe in entering and whitewashing it. 4. That the plaintiff entered and whitewashed the house *under the defendant's employment;* contracted the disease therein and remained sick for a considerable time, suffered greatly and was put to great loss and expense by reason thereof. The question is, whether these facts, if established, would give a cause of action, or make a case proper to be submitted to the jury. The plaintiff was the hired servant of the defendant. The legal relation existing between the parties was that of master and servant. Then what duty devolves upon the master, as regards the expo-

sure of his hired servant to an infectious disease under his employment? In respect to injuries to the person of the servant while engaged in his master's business under his employment, the law is supposed to be well settled. If the servant engage with knowledge of the dangerous character of the employment, he will be deemed, in the absence of any qualifying facts, to have contracted with reference thereto, and to have assumed the risks incident to the service. (*Ryan* v. *Fowler*, 24 N. Y., 410.) But the principal or master is responsible for injuries resulting to his employees from his personal negligence or misfeasance. (*Keegan* v. *The Western R. R. Co.*, 8 N. Y., 175 ; *Warner* v. *Erie Railway Co.*, 39 id., 468 ; *Connolly* v. *Poillon*, 41 Barb., 366 ; Affd. in Ct. App., 41 N. Y., 619, *n.*) So it has been held that the master is responsible, in case he exposes his servant to unreasonable risks and dangers. In *Noyes* v. *Smith* (28 Vt., 59), it is said that " the master is bound to exercise care and prudence, that those in his employment be not exposed to unreasonable risks and dangers ; and the servant has a right to understand that the master will exercise that diligence in protecting him from injury." This case and this principle have been repeatedly cited in our courts with approval, and Judge BROWN gives the principle significance in *Connolly* v. *Poillon*, when he says that in determining the duty of the master to his servant, reference must be had to the limited means of knowledge possessed by the latter, and to the fact that men whose business is the lowest forms of human labor are not given to thought, reflection, and foresight, and therefore some one must usually think and reflect and foresee for them. Now, had the plaintiff in this case been ignorant of the fact that the house was infected, and the defendant, knowing of it, had omitted to inform him, and he had contracted the disease while engaged there in the defendant's service, undoubtedly the defendant would have incurred liability. It would be manifestly imprudent to send a servant to labor in an infected house. It would expose him to great risk and danger in violation of the plainest rule of right. A master is not privileged, knowingly, to put his servant's health or life in jeopardy, without informing him of the risk so that he may avoid it. So it has been well said, that it is the master's duty to be careful that his servant be not induced to work under the supposition and belief that he is secure from danger,

when in fact the master knows, or ought to know, that it is not so. In *Cesar* v. *Karutz* (60 N. Y., 229) the defendant leased apartments to the plaintiff which were infected with the small pox, of which fact the former had notice but did not notify the plaintiff, and the latter contracted the disease. The defendant was held to liability. (See, also, *Jeffrey* v. *Bigelow*, 13 Wend., 518; *B. and A. R. R. Co.* v. *Shanly*, 107 Mass., 568; *Barney* v. *Burnstenbinder*, 64 Barb., 212; *Thomas* v. *Winchester*, 6 N. Y., 397; *Vandenburgh* v. *Truax*, 4 Denio, 464.) In the cases here cited, as well as in the case under consideration, the rule of liability is made to stand upon the principle of right and fair dealing between man and man, whatever may be their relation to each other.

In this case the plaintiff was informed, before his employment by the defendant, that a person had sickened and died in the house of the small pox. Did knowledge of this fact change the case so as to relieve the defendant from liability? The decision in *Patterson* v. *Wallace*, in the House of Lords (28 Eng. Law and Eq., 48), answers this question in the negative, or rather holds, that with such knowledge, accompanied by assurances that there was no danger to be apprehended, it became a question for the jury whether due care and caution had been exercised. In the case cited the injury complained of occurred to a miner, who was employed by the defendant to work in his coal mine. While engaged in taking out coal a stone fell from the roof of the mine and killed him. It appeared that the deceased knew of the dangerous position of the stone and had often complained of it to the defendant's manager, who insisted that there was no danger to be apprehended from it; he, nevertheless, promised to remove it. It was first held in this case, that the knowledge of the deceased that the stone was in a dangerous position, barred the action for the injury occasioned by its fall; but on appeal, this decision was reversed. In considering the case on appeal the lord chancellor first laid down the rule that when a master employs a servant in work of a particularly dangerous character, he is bound to take all reasonable precautions against dangers to be incurred by his workman; and he then proceeded to examine the question, whether knowledge by the workman of the danger which existed should, in that case, bar a right of recovery for the injury which ensued. He laid particu-

lar stress upon the assurances by the manager to the deceased that there was, in point of fact, no danger. The manager had told the workmen when they complained of the danger that they were "afraid of snow, when none fell;" in effect, that there was no reason to apprehend injury. The deceased remonstrated, saying, "it is dangerous." The manager replied: "Why, Robin, you might make your bed below it." So the conclusion was reached by the lord chancellor, that, in consideration of these assurances to the deceased that no danger was to be apprehended or incurred, the jury might find that there was no rashness of conduct on the part of the deceased; and that the question would remain for them, whether, on the whole case, the master had acted toward his servant with due care and prudence.

Now, let us turn to the case in hand, and mark the strong analogy on this point between that and the one cited. Here the plaintiff knew of the fact that the house had been recently occupied by a person having the small pox. The defendant, who was a physician, applied to the plaintiff to whitewash the house. The latter said he was afraid. The defendant then told him there was no danger; that the house had been thoroughly cleansed; that he would guarantee him against danger; that if there was any danger he would say so; or, in substance, all this, with other assurances, that he would incur no risk in doing the work. Thereupon the plaintiff accepted the employment. Now, with this evidence, according to the decision in *Patterson* v. *Wallace (supra)*, it was for the jury to say, on all the facts of the case, whether the plaintiff had acted rashly and inexcusably in entering the house under the employment; and whether the defendant had acted toward the plaintiff with due care and prudence. There were other questions, of course, for the consideration of the jury. It was a question of fact, on the proof, whether the plaintiff contracted the disease at the infected house, as there was some proof of his exposure to the disease elsewhere. As the case is here presented, it should have been submitted to the jury on all the evidence, with proper remarks and instructions by the court on all the questions of fact presented by the pleadings and the evidence. The nonsuit and dismissal of the complaint were erroneous. A new trial must be granted.

LEARNED, P. J. :

I concur in this result. But it should be noticed, I think, that the pleadings admit that the representations made by the defendant were untrue; and that it is proved that one of these representations, admitted to be untrue, was that the house had been thoroughly cleansed, which was a matter of fact not of opinion; and further, that the defendant was the health officer of the place and a physician; on whose statements, therefore, the plaintiff might rely.

Present — LEARNED, P. J., and BOCKES, J. BOARDMAN, J., taking no part.

Judgment and order reversed; new trial granted, costs to abide event.