ETHEL L. FARLEY, executrix, *vs.* EDWARD E. TOWER COMPANY.

SAME *vs.* STANDARD PYROXOLOID CORPORATION.

Suffolk.    May 17, 1929. — May 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Negligence*, Of vendor, Sale of dangerous article, Contributory. *Sale*, Of dangerous article. *Proximate Cause. Practice, Civil*, Requests, rulings and instructions. *Evidence*, Presumptions and burden of proof.

A person who sells an article, which he knows is inherently dangerous to human life, limb or health, to another person, who has no knowledge of its true character, and fails to give notice thereof to the purchaser, is liable in damages to a third person who, while in the exercise of due care, is injured by a use of it which should have been contemplated by the seller. Per FIELD, J.

At the trial of an action of tort for personal injuries by a woman against a dealer who sold combs made of pyroxoloid to a hairdresser, there was evidence that pyroxoloid is "practically the same as celluloid" and, although "stable enough at ordinary temperatures," is "highly inflammable" and dangerous when used in proximity to heat; that the defendant knew of the inflammable character of the combs; that he gave no notice thereof to the hairdresser; that the hairdresser had no knowledge thereof; that the plaintiff went to the hairdresser's establishment for the purpose of having her hair "water waved"; that the hairdresser wet the plaintiff's hair, put several of the combs in it and commenced to dry it with hot air from an electric dryer; that the plaintiff felt the heat and asked for a change in the process; that the hairdresser made a change and told the plaintiff to let her know if she felt the heat again; and that thereafter the combs took fire with a "sizzling noise" and with smoke and the plaintiff's head was burned. There was no evidence that the combs were defective or that there was any contractual relation between the plaintiff and the defendant. It appeared that the combs were sold to the hair-

dresser in containers bearing instructions that the hair should be dampened before retiring and the combs inserted, and that "hair must be thoroughly dried before removing" them. The defendant, in answers to interrogatories, stated that the combs were not intended to be used in connection with a machine used to produce heat and that it was not necessary to use such an instrument. The hairdresser testified that hairdressers always used a dryer of some kind and heat; and that it was necessary to use a current of warm air to dry hair thoroughly, although the witness would not say that it was "impossible to water wave hair by dampening the hair before retiring, inserting the combs and allowing the hair to dry naturally." The trial judge denied a motion by the defendant that a verdict be ordered in his favor. *Held,* that

(1) Danger to human life, limb or health through an article is inherent when it is due to the nature of the article rather than merely to a defect in an article naturally harmless;

(2) Although the combs were dangerous only upon the application of heat, a finding was warranted that they were articles inherently dangerous to human life, limb or health;

(3) Notwithstanding the defendant's answers to interrogatories to the effect that it was not necessary to use heat to dry the hair after the insertion of the combs, the testimony by the hairdresser warranted a finding that the defendant reasonably should have foreseen the use of heat by the hairdresser as a natural and probable consequence of a sale of the combs to him without notice of their dangerous character;

(4) A finding was warranted that the sale by the defendant was the proximate cause of the plaintiff's injury;

(5) The plaintiff could not be said to have been guilty of contributory negligence as a matter of law;

(6) The defendant's motion properly was denied.

With the action above described was tried an action by the same plaintiff against the manufacturer from whom the dealer bought the combs. The evidence respecting the dangerous nature of the combs, the hairdresser's lack of knowledge thereof and the plaintiff's conduct was the same as in the action against the dealer. It did not appear that, when the combs were sold by the defendant, they or their containers were marked in such a way as to give notice of their dangerous character when used in connection with heat. The defendant, in answer to interrogatories, stated that the combs were not intended for use with a machine designed to produce heat. There was no evidence that the defendant in this action did not give the dealer notice of the dangerous qualities of the combs and no evidence of the dealer's knowledge or lack of knowledge of the nature and qualities of the combs. The trial judge denied a motion by the defendant that a verdict be ordered in his favor. *Held,* that

(1) The defendant, as manufacturer of the combs, must be presumed to have knowledge of their dangerous qualities;

(2) Despite the defendant's testimony, a finding was warranted that the defendant reasonably should have foreseen that the dealer would resell the combs and that, if a resale were made by him without

notice of their dangerous qualities, they probably would be used in connection with heat;

(3) While, ordinarily, a vendor is not liable for injuries resulting to a third person by reason of the resale by the vendee of a dangerous article without proof of lack of knowledge by the vendee of its character and of failure by the vendor to give him warning of the hazard, that is not an absolute rule applicable to all cases; and, if the intervening act of the dealer in reselling the combs without disclosure of their character ought to have been foreseen by the defendant, that intervening act, even if wrongful, would not prevent a finding that there was a causal connection between the sale by the defendant and the injury to the plaintiff;

(4) In the circumstances, findings were warranted that the defendant reasonably should have foreseen that the dealer would resell the combs without disclosing their dangerous character and that the plaintiff's injuries were a proximate result of the sale by the defendant;

(5) The defendant's motion properly was denied.

Exceptions to the refusal of requests for rulings at the trial of an action must be overruled if the subject matter of the requests is covered adequately by the trial judge in his charge to the jury.

TWO ACTIONS OF TORT, originally brought by Sadie E. Farley, and after her death prosecuted by the executrix under her will. Writs dated respectively January 21, 1927, and October 10, 1927.

Material evidence at the trial of the actions together in the Superior Court before *Quinn*, J., is stated in the opinion. The judge denied a motion by the defendant in each action that a verdict be ordered in its favor. The jury found for the plaintiff in each action in the sum of $8,000. The defendants alleged exceptions.

The cases were argued at the bar in May, 1929, before *Rugg*, C.J., *Crosby, Carroll, Sanderson,* & *Field,* JJ., and afterwards were submitted on briefs to all the Justices.

*J. A. Brickett,* (*P. R. Johnson* with him,) for the defendants.

*J. C. Woodman,* for the plaintiff.

FIELD, J. Sadie E. Farley, herein referred to as the plaintiff, brought three actions of tort against, respectively, Marie H. Dederick, herein referred to as the hairdresser, Edward E. Tower & Company, herein referred to as the dealer, and the Standard Pyroxoloid Corporation, herein referred to as the manufacturer, to recover for personal

injuries alleged to have been sustained by her while having a "water wave" in a hair-dressing establishment conducted by the hairdresser. The cases were tried together by a judge and a jury. In the action against the hairdresser there was a verdict for the defendant. In each of the other actions there was a verdict for the plaintiff, and the two cases are before us on the defendants' exceptions to the refusal of the trial judge to direct verdicts for the defendants and to give the instructions requested. Exceptions taken to the admission and exclusion of evidence are waived. The plaintiff died after the verdicts were rendered and the actions are prosecuted now by the executrix of her will.

The jury would have been warranted in finding, among other facts, that the plaintiff went into the establishment conducted by the hairdresser to have her hair dressed by a method known as water waving; that in the process an attendant wet the plaintiff's hair, put eight or ten combs in it while it was wet, and was drying it with hot air from an electric dryer when the combs took fire — there was a "sizzling noise" and smoke, but no flame or explosion — and burned the plaintiff's head; that the combs were bought by the hairdresser from the dealer, and by it from the manufacturer who made them, and that the plaintiff's injury resulted from the use by the attendant in the hair-dressing establishment of these combs in connection with heat. There was no evidence of a contractual relation between the plaintiff and the dealer or the manufacturer, injury to property, or defect in the combs.

1. It was not error to refuse to direct a verdict for the dealer.

Whatever may be the rule applicable to other facts, it is settled that a person, who sells an article, which he knows is inherently dangerous to human life, limb or health, to another person, who has no knowledge of its true character, and fails to give notice thereof to the purchaser, is liable in damages to a third person who, while in the exercise of due care, is injured by a use of it which should have been contemplated by the seller. *Wellington* v. *Downer*

*Kerosene Oil Co.* 104 Mass. 64. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593. *Kusick* v. *Thorndike & Hix, Inc.* 224 Mass. 413, 414. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 511. See *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, 343; *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 444; *Tompkins* v. *Quaker Oats Co.* 239 Mass. 147, 149; *Pitman* v. *Lynn Gas & Electric Co.* 241 Mass. 322, 324.

The jury would have been warranted in finding facts which would render the dealer liable under this rule. There was testimony that the combs were made of pyroxoloid, which is "practically the same as celluloid." It is composed principally of pyroxylin, a "compound of cellulose and nitric-acid, a nitro-cellulose or guncotton." Flame will readily ignite pyroxylin, and it is "ignitable by the direct application of heat" without flame. It is "stable enough at ordinary temperatures, that is seventy degrees Fahrenheit." It "would ignite not at any exact temperature, it might vary anywhere from two hundred and forty degrees to three hundred degrees Fahrenheit." "If it had been subjected to heat it would be partly decomposed and would be then unstable and it might ignite at a very low temperature . . . the temperature of boiling water or two hundred and twelve Fahrenheit." There was testimony that as a "matter of common knowledge" pyroxylin is "highly inflammable." "It is explosive — that is its character." When heat is applied it begins to decompose and its temperature "rises considerably higher than the heat that is applied to it," and it "is commonly recognized by the public at large as a substance that is dangerous when used in proximity to heat." From this testimony it could have been found that the combs, when sold by the dealer, were inherently dangerous to human life, limb or health. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 512, 514. The fact that, so far as appears, they were dangerous only when heat was applied to them, does not necessarily take them out of the class of things inherently dangerous. Danger is inherent when it is due to the nature of an article and not to a defect in an article

naturally harmless; but the dangerous quality of an article is none the less inherent because it is brought into action by some external force. See *Boston & Albany Railroad* v. *Shanly*, 107 Mass. 568; *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 517.

The evidence — especially the answers to interrogatories propounded to the dealer's officers — warranted the finding that the dealer knew that the combs were within this class of inherently dangerous things. There was testimony also from which it could have been found that the dealer gave no notice to its purchaser, the hairdresser, orally, by marks or labels, or otherwise, of the true character of the combs and that neither the hairdresser nor the attendant in her establishment, who dressed the plaintiff's hair, had knowledge thereof.

The jury could have found that the use of the combs shown by the testimony should have been contemplated by the dealer. According to the answers to the interrogatories propounded to the dealer's officers, the combs were sold in a container or containers and each container bore "a representation of a woman's head with combs in place . . . and the following wording: '"Vassar" Water Wavers Contains 4 Combs Inch. Before retiring dampen the hair and insert . . . where waves are desired. In order to obtain a more perfect wave, hair must be thoroughly dried before removing wavers,'" the combs "were not designed to be used for the dressing of hair together with a machine that was designed to produce heat" and it was not "necessary to use an instrument designed to produce heat in giving water waves." On the other hand the hairdresser testified that in the process of water waving "in order to dry hair thoroughly it is necessary to use a current of warm air" though she would not say that it was "impossible to water wave hair by dampening the hair before retiring, inserting the combs and allowing the hair to dry naturally." She "never did it" and did not "know of anybody that ever did." The attendant testified that "in a beauty parlor it is always done by a dryer of some kind and by heat." There was testimony that "the temperature of the heat in the form of

hot air" which could be applied to a woman's hair without inconveniencing her would vary from two hundred to three hundred degrees Fahrenheit. It was a fair inference from this and other evidence in the case that, according to human experience, it was likely that the combs would be used in connection with a machine designed to produce heat unless warning of the hazard was given. The jury, therefore, could have found that such use should have been foreseen by the dealer and was a natural and probable consequence of its sale of the combs without notice of their dangerous character. Even if such a use of pyroxoloid combs was unprecedented, it would not follow necessarily that it was outside the field of general probability. See *Perlman* v. *Burrows*, 270 Mass. 182.

Since it could have been found that the plaintiff's injury was caused by the use of the combs in connection with a machine designed to produce heat and that such use was a natural and probable consequence of the sale of the combs by the dealer, the conclusion was warranted that this sale was a proximate cause of the plaintiff's injury, and that the acts of the hairdresser and her attendant were not intervening causes which broke the causal connection. *Guinan* v. *Famous Players-Lasky Corp. supra.* *Wellington* v. *Downer Kerosene Oil Co. supra*, at page 68. *Lane* v. *Atlantic Works*, 111 Mass. 136. *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352. *Stone* v. *Boston & Albany Railroad*, 171 Mass. 536, *Bellino* v. *Columbus Construction Co.* 188 Mass. 430, and *Horan* v. *Watertown*, 217 Mass. 185, relied on by the dealer, are distinguishable on grounds indicated in *Leahy* v. *Standard Oil Co. of New York, supra*, page 364. See also *Teasdale* v. *Beacon Oil Co.* 266 Mass. 25.

It could not have been ruled as matter of law that the dealer's burden of proving contributory negligence on the part of the plaintiff was sustained. G. L. c. 231, § 85. Her testimony, by which alone she was bound on this aspect of the case, that during the water-waving process she felt the heat, asked for a change in the process, which was made, and was told to let the attendant know if she felt the heat again, did not justify such a ruling.

2. It was not error to refuse to direct a verdict for the manufacturer.

The evidence in the case against the manufacturer was the same as in that against the dealer so far as it concerned the dangerous character of the combs, the lack of knowledge thereof by the hairdresser and the attendant in her hair dressing establishment, and the due care of the plaintiff. Moreover, the manufacturer "must be presumed to know the nature and quality" of the combs which it made, and proof of this knowledge was not required. *Thornhill* v. *Carpenter-Morton Co. supra,* at page 597.

According to the answers to interrogatories propounded to the manufacturer's officers, the manufacturer "at one time packed such combs in boxes labelled 'Vassar', each box containing one dozen pairs; subsequently such combs have been packed in large display boxes containing twelve smaller boxes, each of the small boxes containing one set of four combs" and being marked as shown in the case against the dealer, but the interrogated officer did not "know how the containers of those particular combs were marked." He stated that "the water waving combs manufactured" by the defendant manufacturer "were not designed to be used in the dressing of hair in proximity to an instrument designed to produce heat." In spite of this statement it was a fair inference from the evidence, as in the case against the dealer, that, according to human experience, it was likely that the combs would be used in connection with a machine designed to produce heat, unless warning of the hazard was given. It could have been found that the manufacturer contemplated that the dealer would resell the combs and that if such resale was made without notice of their dangerous character, the use of them in connection with a machine designed to produce heat would be a natural and probable consequence of such resale.

It was not contended at the trial that there were any marks or labels on the combs or the containers when sold by the manufacturer which would give notice to the dealer or the hairdresser of the dangerous character of the combs when used in connection with heat. Moreover, there are

some indications in the charge that there was no contention at the trial that the manufacturer gave notice to the dealer in any other way though, as the manufacturer now contends, there was no evidence that it did not give such notice. There was no evidence in the case against the manufacturer of the dealer's knowledge or lack of knowledge of the nature and qualities of the combs, as the only evidence on this point was contained in the answers to interrogatories propounded to the dealer's officers in the case against it. G. L. c. 231, § 65.

The jury, therefore, would have been warranted in finding all the facts which would render the manufacturer liable under the rule stated, except lack of knowledge by the dealer of the true character of the combs and failure of the manufacturer to give notice thereof to the dealer, unless it can be said that there was also failure to prove that the use of the combs in connection with a machine designed to produce heat should have been contemplated by the manufacturer.

While, ordinarily, a vendor is not liable for injuries resulting to a third person by reason of the resale by the vendee of a dangerous article without proof of lack of knowledge by the vendee of its true character and of failure of the vendor to give him warning of the hazard, we think this is not an absolute rule (see *Waters-Pierce Oil Co.* v. *Deselms*, 212 U. S. 159, 179; *Bryson* v. *Hines*, 268 Fed. Rep. 290, 294; *Clement* v. *Crosby & Co.* 148 Mich. 293), and that the significance of such failure of proof is that by reason thereof ordinarily there is failure to prove that the use of the dangerous article should have been contemplated by the vendor, and that there was a causal relation between the sale by him and the injury to the third person. However, there may be facts, other than lack of knowledge by the vendee of the dangerous character of an article and failure of the vendor to give him notice thereof, which warrant the conclusion that a use of such article resulting in injury to a third person should have been contemplated by the vendor and that the sale by the vendor was the proximate cause of the injury to the third person. The intervening act of the vendee — the resale of the dangerous article without disclosure of its true character — even if

wrongful, would not break the causal connection between the sale by the vendor and the injury to the third person if such sale without disclosure ought to have been foreseen by the vendor as likely to happen. *Lane* v. *Atlantic Works, supra. Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352. *Dalton* v. *Great Atlantic & Pacific Tea Co.* 241 Mass. 400. *Teasdale* v. *Beacon Oil Co. supra. Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 518.

Though some of us, including the writer, think otherwise, a majority of the court are of opinion that the jury would have been warranted in finding on the evidence in this case, even in the absence of proof of lack of knowledge by the dealer of the dangerous character of the combs and failure of the manufacturer to give notice thereof, that the manufacturer should have foreseen that the dealer might sell them without disclosing their dangerous character; that, as the combs were sold to the dealer in marked containers for the purpose of resale, it was likely, according to the usual experience of mankind, that the dealer might resell them without making any oral or written statement as to their dangerous qualities, adding any statement to that effect to the markings on the containers, or so labelling the combs themselves; and that, consequently, the manufacturer should have contemplated the use of the combs in connection with a machine designed to produce heat, and the sale by the manufacturer was the proximate cause of the injury to the plaintiff.

3. There was no error in the denial of requests for rulings. The subject matter thereof was covered adequately by the charge.

*Exceptions overruled.*