## WALSTROM OPTICAL CO. v. MILLER.
### No. 11205.

Court of Civil Appeals of Texas. Dallas.
April 8, 1933.

Rehearing Denied May 6, 1933.

Touchstone, Wight, Gormley & Price and Claude R. Miller, all of Dallas, for appellant.

Whitehurst & Whitehurst, of Dallas, for appellee.

BOND, Justice.

Appellee, Ruth F. Miller, instituted this suit against appellant, Walstrom Optical Company, seeking to recover damages for personal injuries alleged to have been sustained by her on account of some dye off of a pair of eyeglass frames, which she alleged she purchased from appellant.

The grounds of negligence asserted by appellee are: (1) That appellant negligently placed, or caused to be placed, a poisonous substance, lacquer dye, on the eyeglass frames in question, and sold the frames to her, knowing that said poisonous substance would be injurious to appellee when she wore said frames; (2) that appellant knew, or by the exercise of reasonable and ordinary care could and should have known, that the poisonous substance was on the frames at the time they were purchased by appellee; (3) that appellant knew, or by the exercise of reasonable and ordinary care could and should have known, the injurious effect said poisonous substance from said eyeglass frames would have on appellee's face and nose by said lacquer dye rubbing off of said frames on to appellee's face and nose; (4) that appellant failed, not only to use or exercise reasonable care, but was guilty of gross negligence in fitting the frames upon appellee with said lacquer dye thereon when they knew that said dye would rub off from said frames on appellee's face and nose, and produce injuries.

The case was tried to a jury, and, in response to the only issue submitted as to the liability of appellant on said alleged negligence, was as indicated by question No. 1: "Did the defendant, its servants or employees, apply an excess amount of dye to the rims of the glasses in question?" which issue was followed by issues as to whether the application of an excess amount of dye was negligence, and, if so, whether it was the proximate cause of appellee's injuries.

The jury found, in response to said special issues, that appellant did apply an excess amount of dye to the rims of the glasses; that such application was negligence, and that such negligence was the proximate cause of the injuries. It also found that appellee's damages were the sum of $500, and, accordingly, judgment was rendered in favor of appellee and against appellant.

Appellant's first assignment, followed by appropriate propositions anent thereto, is that there is no allegation in appellee's petition that the appellant was negligent in applying an excess amount of dye to the rims of the glasses sold by it to appellee, from which appellee received her injuries, and it was error for the trial court to submit the issue in the absence of such pleadings.

The pertinent allegations as to negligence of appellant, in applying poisonous dye to the eyeglass frames, is as stated above, and, in addition thereto, appellee specifically alleged "that on or about the 7th day of January, 1931, she returned to defendant's place of business, in the City of Dallas, Texas, and exhibited her face and nose to said employees at said time, whereupon, one of the employees of defendant, whose name is unknown to plaintiff, for which reason she cannot specifically allege his name, advised and stated to plaintiff that he, the employee of said defendant, would treat said frames with an acid or acid solution, which would remove or take away the surplus dye from said frames." This is the only allegation that the defendant was guilty of negligence in applying an excess or surplus amount of dye to the eyeglass frames.

The majority of this court is of the opinion that the allegation, as to what the employee said to appellee, that "he would treat the frames with acid and remove the surplus dye from the frames," taken in connection with the other allegations, that appellant negligently applied the dye to the frames, and that it rubbed off on appellee's face and nose, and its further allegations in the petition that "by reason of the acts of negligence as herein alleged, which is the direct and proximate result of the negligence of defendant," are sufficient in the absence of exceptions to admit of the issue as to whether appellant applied an excess amount of dye to said frames. The writer does not entertain that view. He interprets the allegations that appellant's act of negligence, as disclosed by appellee's petition, bears only as to the application of poisonous dye to the eyeglass frames, and not in the application of an excess amount of such dye, or the manner in which the dye was applied. One might be guilty of negligence in applying an excess amount of dye to eyeglass frames and not be negligent in applying a reasonable or lesser amount. The allegation as to what an employee said to appellee subsequent to the sale, "that he would treat the frames with acid and remove the surplus of dye," is an allegation of a conclusion formed by the employee, evidentiary in character, and has no probative force on the issue as submitted by the court. It was merely a deduction on the part of an unidentified clerk, and not in connection with or in explanation of any transaction in the line of his duty in which he was en-

gaged at the time. However, be that as it may, the form of the issue as to whether appellant applied an excess of dye to the eyeglass frames, or whether it applied a less amount, or whether it applied dye without stating the amount, becomes immaterial to the final disposition of this case, as we conclude from a résumé of appellant's further contentions.

Appellant further assigns that the evidence is wholly insufficient to show actionable negligence in applying an excess amount of poisonous dye to the eyeglass frames, where the undisputed testimony shows that the dye used was harmless to ordinary persons, and that the injuries appellee received were caused by an idiosyncrasy of her skin, and that it was error for the court to overrule its motion for an instructed verdict.

All the testimony in the record discloses that the application of dye to eyeglass frames is a usual, customary, and almost everyday occurrence, the dye is universally used by manufacturing opticians, and its use on such frames had been employed by appellant for many years and on many thousand eyeglass frames, without injurious effect, and had proven to be harmless to persons of ordinary susceptibilities. Expert dermatologists, testifying both for appellant and appellee, stated that appellee's injuries were due to a peculiar idiosyncrasy of her skin. Dr. B. J. Griffin, an expert dermatologist, testified as follows:

"Q. When you get that reaction, or the irritation that you spoke of, it is due to some people having a weakness or susceptibility, which is determined from a medical standpoint, like those who eat certain foods, and things like that, and get ill effects from it? A. That is true.

"Q. And you might have that from certain persons, and they call it by a certain term, and some are likely to have it, what do you call that? A. Idiosyncrasy.

"Q. Irritation from foods and medicines, isn't that true? A. Yes.

"Q. Now, then, if it (the dye) was properly put on there, and would not come off on her face, would it injure anything? A. Well, if she was susceptible to the lacquer that was put on there, she would get that, regardless of how it was put on.

"Q. But looking at the whole business, it is very unusual that there would be an eruption from a lacquer, isn't it, doctor? A. Yes sir, it is unusual.

"Q. Very unusual? A. Yes sir, very unusual."

Dr. G. A. Lindsay also testified:

"Q. In other words, most people are not susceptible to anything like that, are they, doctor, the ordinary dye used by an optical concern? A. It is very rare.

"Q. Do you know, in addition to that, that iodine and other drugs all have different results, peculiar to different people, that is true, isn't it? A. Yes. sometimes I prescribe quinine, and some people can take it, and I cannot.

"Q. Now, could you, by just looking at a person at the time, tell whether or not they could take quinine? A. No sir."

Dr. Bedford Shelmire, an expert dermatologist, testified:

"Q. In comparison with the number of persons that wear glasses, as you have observed, as well as from your treatment of people, would you or not say that it was an unusual thing for people to have dye affect them, or of the type of Mrs. Miller, to have that idiosyncrasy? A. It is most unusual for a person to be susceptible to poison from porous frames, so far as inflammation is concerned, dyes are usually not that way.

"Q. That would be due to a sensitive condition? A. Yes, that would be due to a sensitive condition of the person affected.

"Q. Some people are sensitive to certain foods, such as eggs, when taken into their body, are they not? A. Yes, sir."

All the medical testimony agree that the cause of appellee's injury was the idiosyncrasy of her skin that made it susceptible to an eyeglass frame that would not, in any way, injure an ordinary person; that it was most unusual, and that the only way appellant could discover the existence of such peculiarity would be by a test covering a period of two or three days.

Under such testimony, what duty did appellant owe appellee at the time of the alleged purchase by her of the eyeglass frames in question? Was it compelled to make a test to ascertain whether she was of the ordinary type which dye would not affect, or foresee that her skin would be peculiarly susceptible to the dye on the frames? In the case of Payne v. Robey, 257 S. W. 873, the Commission of Appeals, approved by the Supreme Court, used this language: "Negligence to be actionable must be the proximate cause of the injury complained of, and the test as to whether a negligent act is a proximate cause of the injury is whether in the light of all attendant circumstances, the injury was such as ought reasonably to have been anticipated as a consequence of the act."

We conclude that appellee neither proved actionable negligence nor the proximate cause of her injuries, and, the evidence failing to connect the alleged injury with the negligence as alleged, the jury should have been instructed to return a verdict for the defendant.

We have carefully considered all further assignments urged by appellant, and they are expressly overruled.

We are not unadvised of the reluctance felt

by appellate courts to set aside a judgment rendered by a learned, fair, and impartial trial court, nevertheless, when it is palpably against all the evidence, and manifestly contrary to the authorities of this state, a court will not hesitate in the performance of. its duty.

From what we have said, the judgment of the lower court is accordingly reversed and here rendered.

Reversed and rendered.