FRANK ZIRPOLA, PLAINTIFF-RESPONDENT, v. ADAM HAT STORES, INC., A CORPORATION OF NEW YORK, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 18, 1938—Decided February 6, 1939.

For the appellant, *Fred Saperstein.*

For the respondent, *Theodore Rabinowitz.*

The opinion of the court was delivered by

HETFIELD, J. This action was instituted in the Supreme Court for the breach of an implied warranty arising out of the provision of section 15 of the Sale of Goods act, *Pamph. L.* 1907, *p.* 316; *R. S.* 46:30-21, subdivision (1) of which provides: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The plaintiff-respondent presented proof at the trial to establish that sometime in March, 1936, he purchased a hat from the defendant at a store conducted by it in Jersey City, and that at the time of delivery there was placed in the hat defendant's printed guarantee reading in part: "Adam Certificate of Guarantee * * * carefully examined before leaving our factories to maintain the Adam standard of quality * * * We guarantee this hat to give proper wear * * *." Plaintiff wore the hat occasionally for a few weeks and then had it cleaned. He continued to wear it for a short time thereafter, when he noticed that his hair, which was naturally black, had turned a reddish-orange color on each side of his head, and that he had a skin eruption on his forehead and the frontal region of the scalp, which condition was caused by reason of the hat being impregnated by a dye known as paraphenylenediamine, an aniline derivative of a poisonous nature. The plaintiff alleged that his nervous system was affected by said poisonous dye, and that he had been subjected to humiliation and embarrassment by reason of the skin eruption and discoloration of his hair.

The jury rendered a verdict in favor of the plaintiff in the sum of $200, and the defendant now seeks to reverse the judgment which was entered in accordance with the verdict.

The defendant did not contend at the trial or argue here that there was no implied warranty by the defendant that the hat was reasonably fit for the purpose for which it was to be used.

The first point upon which a reversal is sought, and which was advanced by the defendant at the trial on motions for a nonsuit and directed verdict, is that the implied warranty, in sales of this character, as defined by the statute, does not extend to a buyer who is admittedly abnormally sensitive to the goods warranted, but only applies to the normal or average person. We find no merit in this contention. There was expert testimony presented by the plaintiff to show that the dye in question was of a poisonous nature; that the use of same as such is forbidden in New York and other states; that as a result of several tests the poison was found to be contained in the outside ribbon and sweatband of the hat; that four or five per cent. of all persons coming in contact with this dye would react to and be injured by it to an appreciable extent, but that all persons are somewhat sensitive to the poison. There was also proof to show that the condition of the plaintiff was caused by the dye and that he was abnormally sensitive to same.

The mere fact that only a small proportion of those who use a certain article would suffer injuries by reason of such use does not absolve the vendor from liability under the implied warranty created by the statute; otherwise, in every action to recover damages for the breach of an implied warranty, it would be necessary to show that the article sold, whether it be food or wearing apparel, would be injurious to every user. It is well known that many people are immune from certain poisons as well as contagious and infectious diseases, yet it could not be contended by reason thereof that a vendor selling an article infected with disease germs or containing a poisonous substance injurious to the user of the article, would not be liable under an implied warranty, unless it could be proved that injury would be the inevitable result of the use of such article. While there was expert testimony offered by the defendant to show that tests made of the hat

were negative as to the poison complained of, there was no direct proof presented to show that this character of dye was not used in the manufacture of the hat. We think there was sufficient evidence to establish the fact that the poisonous dye was contained in the hat at the time of purchase, and as a result thereof plaintiff was injured.

It is next contended that because of the fact that subsequent to its purchase and before the injuries complained of were noticed, the hat was cleaned by a process of immersing it in naphtha contained in a ten-gallon pail, together with several other hats, all of which were afterwards scrubbed with the same brush, the trial court erred in denying the motion for nonsuit on the ground that "the proof being that an independent efficient cause was introduced by plaintiff, in absence of any proof that the condition complained of existed at the time the hat was purchased." This contention was not advanced or referred to as a ground on the motion for nonsuit, and, therefore, cannot be considered on this appeal.

It is next argued that the court erroneously refused to charge as follows: "The burden is upon the plaintiff to establish by a fair preponderance of the evidence that the renovation of the hat in no way contributed to the running or loosening of the dye," and also that "a condition shown to exist and not containing inherent elements of change is presumed to continue for a reasonable period particularly as in this case where all the available knowledge and evidence are in the nature of things at the command of this plaintiff in control of the property." We think these requests were sufficiently covered to the extent they were entitled to be in that part of the court's charge wherein it was stated: "Now, gentlemen, it is the law that a manufacturer who puts or causes the component parts to be put together or accepts them as his own after they are assembled must be presumed to know the nature and quality of the resultant compound which he solicits the public to purchase. So that in this case, gentlemen, you will determine whether or not this hat was reasonably fit for the purpose of its being worn, and in that connection you will determine whether or not this parapheny-

lenediamine, apparently a poison if used in certain quantities, was present in this hat. Of course if it was not then there could be no liability in this case. If it was then you would proceed to a further question, and that would be to determine whether or not that substance was the proximate cause of the condition which this man complains of. Now, by 'proximate cause' we mean the moving cause, the thing which brought about that which happened; and even though this substance was present, if that substance was not the proximate cause of this condition then again there could be no recovery; and the words 'proximate cause' indicate that there must be no other culpable or efficient agency intervening between the defendant's dereliction and the loss complained of."

An intervening cause is an act of an independent agency which destroys the causal connection between defendant's negligent act and the injury; the independent act being the immediate cause. *Davenport* v. *McClellan,* 88 *N. J. L.* 633. The proximate cause is that cause which naturally and probably led to and which might have been expected to produce the result; there must be an unbroken causal connection; it is the efficient cause; the one that necessarily sets the other causes in operation. *Kelson* v. *Public Service Railroad Co.,* 94 *N. J. L.* 527.

Whether there had been a breach of the statutory implied warranty was a matter of fact properly submitted to the jury for its determination.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 16.

*For reversal*—None.