·Marie Stanton, Appellant, v. Sears Roebuck and Company, Appellee.

Gen. No. 41,827.

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed January 7, 1942.

JOHN A. BLAKE and JOHN O. WAGNER, both of Chicago, for appellant.

LEDERER, LIVINGSTON, KAHN & ADSIT, of Chicago, for appellee; HARRY H. KAHN and LEO H. ARNSTEIN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Defendant is a retailer of merchandise. On October 29, 1936, plaintiff bought two black rayon dresses from defendant at its store located at State and Van Buren streets, Chicago. She purchased them for her personal use. She enjoyed good health and had not suffered from any skin disease. She had been wearing black rayon dresses for a number of years prior to the time of such purchase and had not suffered any injury or skin disease as a result of wearing that type of dress. She was employed as a cashier in a cafeteria and her employer required that she wear black dresses.

After wearing one of the dresses about two weeks she became ill and developed a skin disease known as "dermatitis." She consulted physicians who treated her for a long period of time. Because of the "dermatitis" she was unable to work for several years. She testified that after she wore the dress two weeks her arms got sore, the skin became blistered and inflamed from the waist up, including her arms and shoulders, the pores were filled with "black stuff," the blisters were wet, water was coming out of them and the pores were filled with dye.

For many years defendant handled millions of black rayon garments annually, including dresses of the type purchased by plaintiff. It purchased these garments from large reputable and reliable manufacturers who sell to the trade generally. Never before had any complaint of a reaction or ill effect come to the defendant from any of the purchases of black rayon garments. During the year preceding the sale of the two dresses, defendant sold half a million dresses of the same type. A trial resulted in a verdict for the plaintiff in the sum of $1,500. Defendant's motion for a judgment notwithstanding the verdict was allowed. Plaintiff appeals and asks that we enter judgment in her favor.

Plaintiff asserts that a motion for judgment notwithstanding the verdict should be denied, if there is in the record any evidence, which fairly tends to prove the material allegations of the complaint, and defendant does not challenge this statement. Plaintiff advances the argument that a retail dealer in women's dresses is liable on an implied warranty where it sells a dress to a woman who suffers injuries from poisonous dyes in the dress, of which poisonous dyes the woman had no knowledge. Defendant answers that a vendor is not liable upon any theory, whether it be warranty or negligence, to a purchaser of a garment not shown to contain any harmful or poisonous substance who suffers a reaction by coming in contact

with such garment due to some peculiar idiosyncrasy, allergy or sensitivity. Plaintiff relies on an implied warranty that "the dress she bought was suitable for the purpose for which she bought it, and that the said dress contained nothing that would be injurious to her health if she wore it." She cites par. 1 of sec. 15, ch. 121½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 121.19], which reads: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is as [an] implied warranty that the goods shall be reasonably fit for such purpose." Plaintiff insists that it is the duty of the seller to know that the goods he is selling are not injurious to the customer, and that in the instant case the plaintiff disclosed that the dress was for her own use. Plaintiff asserts that she relied upon the implied warranty that she could wear the dress without injury to herself; that she had no experience with dyes in dresses; that she had no experience that would lead her to fear that dyes in dresses would cause an injury to her, and that the statute puts the responsibility directly on the seller to be careful and cautious in selling goods that might cause injury. In urging that we sustain the judgment, defendant maintains that there is no evidence that the garment contained any harmful or poisonous substance; that there was no chemical analysis of the garment; that there was no evidence of any negligence on the part of defendant; that there was no evidence that there was anything wrong with the dress, and that there was no duty upon the defendant to make any chemical analysis or to inspect for latent defects. Defendant also maintains that plaintiff urged one theory in the trial court and has shifted to another theory in this court; that she tried the case on the theory that the defendant was guilty of negligence and is now

relying on the theory of an implied warranty. We do not agree with the contention that the plaintiff has shifted the theory on which her action is based.

Plaintiff testified that shortly after she became ill she took the dress back to defendant's store, and that a few weeks later defendant returned the dress to her minus one sleeve. Two physicians were called to the stand by plaintiff. Dr. S. E. Donlon testified that he treated her; that he made a test with patches of the dress and that the test showed that the dye in the dress was the cause of plaintiff's condition. Dr. L. F. Weber testified to the same effect. Defendant introduced only one witness, Morris L. Heffer, who is manager of its midwest district of women's apparel, and has held that position for nine years. This district embraces the area from Kansas City to Detroit and Duluth to St. Louis. He testified relative to the care exercised in the purchase of dresses which defendant sells to the retail trade. He also testified that plaintiff was the only one who had complained as to any ill effects from the use of any such dresses. Defendant also relies on the testimony of the two physicians introduced by plaintiff. They testified that Mrs. Stanton was possessed of a peculiar and rare personal idiosyncrasy commonly known as an allergy, or sensitivity to certain substances. Both testified that countless other women could have worn the dress without any reaction or ill effect whatever. The record does not disclose that any chemical analysis of the dress was made by either of the parties to the action. There was no evidence that the dress contained any harmful or poisonous substance. After discovering her plight, plaintiff gave one of the two black rayon dresses to her sister. The sister found it to be too small. There is no evidence that the sister suffered any discomfort from wearing it. The evidence also shows that prior to the time the plaintiff wore the dress she was a normal person in good health and not allergic or sensi-

tive to dresses of that kind. The evidence also shows that she wore the dress for about two weeks before suffering any discomfort. Plaintiff insists that she became allergic after she had worn the dress, that she was poisoned thereby and that thus her resistance was broken down. She admits that she has been allergic to dresses of that type from approximately two weeks after she made the purchase until the present time. We are satisfied that the evidence shows plaintiff's condition was caused by the dress and the allergy which developed. We also find that there is no evidence that the dress contained any harmful or poisonous substance of any kind. Plaintiff suggests that defendant had the opportunity, because of its possession of the sleeve, to analyze the dyes in the dress. Plaintiff had a like opportunity. The burden of proof was on the plaintiff. She did not offer any evidence that the dyes in the dress were poisonous or contained any harmful ingredient. It is well known that persons become allergic or unduly sensitive to food, dust, odors, plants, drugs and clothing. Apparently, plaintiff became allergic to black rayon dresses. The fact that she had not been allergic to such dresses previously would not show that she could not become allergic. By giving away the other black rayon dress plaintiff revealed that she did not consider that the dyes in such dress contained poison which would cause injury to her sister. According to the testimony of the doctors, there are various types of allergy. It may arise from eating such food as chocolate, strawberries and eggs, from breathing some substance, or from coming in contact with something. Various persons may be allergic to various things. The plaintiff's case fell within the type of allergy which results from contact with certain substances. Dr. Donlon testified that an allergy meant a sensitivity to something one way or another; that sensitivity of the skin in some persons might result from contact with a substance; that

countless other people might come in contact with the same substance without having any ill effect or reaction. He testified that plaintiff's condition was such that when she came in contact with a black rayon dress she developed a skin reaction due to her own peculiar sensitivity. We have sifted through the numerous cases cited by the respective parties. In the case of *Barrett v. S. S. Kresge Co.,* 144 Pa. Super. Ct. 516, 19 A. (2d) 502, decided by the Pennsylvania superior (Appellate Court) in April 1941, wherein the facts are strikingly similar to the facts in the case at bar, the court said:

"In none of the food and beverage cases, however, was there proof that a plaintiff was peculiarly allergic to something not harmful to others. In each there was the presence of a poison or irritant that undoubtedly was intolerant and injurious to the average person. It is well known that some people are so constituted that they cannot eat fish, strawberries, eggs, and many other foods that could be mentioned, without ill effects. It can hardly be said that a vendor thereof would be liable for a breach of an implied warranty solely because of the harmful effect due to a buyer's individual idiosyncrasy." In the *Barrett* case the court also discussed the applicability of section 15 of the Uniform Sales Act (par. 1, sec. 15, ch. 121½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 121.19]) and said:

"We do not conceive that the legislature intended under the Act of 1915 [par. 1, sec. 15, Uniform Sales Act] that a retail vendor of wearing apparel obligates himself by an implied warranty that the merchandise he offers for sale, although harmless to practically all the public, does not contain any substance or ingredient that may injuriously affect some individual purchaser, who has a peculiar susceptibility unknown to the vendor. This, in effect, is appellant's theory. If sound, it would mean that many merchants have a far

502

reaching and possibly a ruinous liability, which they cannot anticipate or with reasonable precaution avoid."

From a careful study of the testimony, the cases cited and the arguments presented, we are convinced that plaintiff failed to produce any evidence that the defendant violated any duty owing to her. Plaintiff failed to prove that defendant was guilty of negligence, and paragraph 1 of section 15 of the Uniform Sales Act is not applicable to the factual situation presented by the record. The court was right in entering judgment notwithstanding the verdict and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

KILEY, J., concurs.

HEBEL, J., dissents.