BENNETT v. PILOT PRODUCTS CO., Inc.

No. 7524.   Decided September 18, 1951.   (235 P. 2d 525.)

See 65 C. J. S., Negligence, sec. 243. Purchaser's peculiar suscepti- bility to injuries from substances in article purchased as indicating negligence. 46 Am. Jur., Sales, sec. 808; 121 A. L. R. 464.

*Rawlings, Wallace, Black, Roberts & Black, Dwight L. King,* Salt Lake City, for appellant.

*Skeen, Thurman & Worsley,* Salt Lake City, for respon- dent.

HENRIOD, Justice.

This is an appeal from an order of the trial court grant- ing a motion for nonsuit made by respondent at the close of appellant's evidence. The judgment is affirmed, with costs to respondent.

Appellant alleged (1) a breach of warranty by and (2) negligence on the part of respondent in distributing, with- out warning, a permanent wave lotion unfit for the use for which it was intended, and containing irritants dangerous to users, which facts respondent knew or should have known, and which irritants injured appellant, who used the lotion. The warranty phase was abandoned at pre-trial and the case was tried to the jury on the negligence theory.

Appellant was a beautician from 1941 to 1946, in which latter year she formed a partnership with another girl. Prior thereto she had suffered no skin affliction. The part- nership purchased some of respondent's lotion for use in its shop. The lotion, containing ammonium thioglycolate, an ingredient common to most cold wave solutions and or- dinarily harmless, was applied to patrons' hair along with a powder fixative which accompanied it, which fixative contained potassium bromate, also ordinarily harmless. The two, according to the manual of instructions, were to be applied with bare hands, and the whole process was con- trolled by an electrical device, adjusted according to hair types. During a week's use, appellant used the products 7 or 8 times, whence blisters and inflammation appeared

between her fingers, which in turn spread to her arms and shoulders. The ailment was diagnosed as dermatitis, resulting in appellant's hospitalization and the eventual desertion of her profession. Patch tests conducted by her own expert witness established the facts that she did not react unfavorably either to the lotion or the fixative, but did to a mixture of the two. Her use of a protective cream and wearing of rubber gloves only aggravated the disorder. Return to the beauty shop after hospitalization led to increased irritation. Obtaining employment in a dye plant gave no relief, since mere handling of fabrics increased her skin irritation. Thereafter she sold her interest in the shop and pursued beauty work no longer. The remaining partner continued to use respondent's products without any ill effects.

The only evidence tending to indicate that the lotion was harmful to anyone else was appellant's own testimony that she had observed soreness on her partner's hands after the latter had used the products, and that one patron suffered two or three little scalp burns, obviously not the result of allergy, but the result of heat, which is quite dissimilar from appellant's ailment. Significantly, on cross-examination, she admitted having testified previously on deposition that her partner had *not* suffered any injury from such use. Significant also is the fact that her partner failed to testify on deposition that she was affected by use of the products.

No other evidence revealed that the lotion, the fixative or a mixture of the two contained any harmful ingredient, except that ammonium thioglycolate produced a reaction in but one allergic woman in 1,000 using it. Nor was any showing made of knowledge on the part of respondent as to the dangerous nature of any ingredient such as might charge respondent with knowledge thereof imposing upon it a duty to warn users. *Farley* v. *Edward E. Tower Co.*, 271 Mass. 230, 171 N. E. 639, 86 A. L. R. 941; *Zirpola* v. *Adam Hat Stores, Inc.*, 122 N. J. L.

21, 4 A. 2d 73. No evidence was forthcoming that would render reasonably foreseeable the peculiar sensitivity or idiosyncracy of the appellant. The fact that some months after appellant's injury respondent added to its instructions for use of its products the employment of rubber gloves does not establish or tend to establish knowledge of danger at the time of injury, or that any ingredient was then harmful. Rather, it seems to negative such knowledge and well may have evidenced a desire to prevent injury even to the allergic, although, as has been seen, appellant's own peculiar sensitivity responded adversely even to the use of rubber gloves.

An expert called by appellant diagnosed her ailment as dermatitis, resulting from an allergy. Further, that allergy produces no immediate effect, but reveals itself some days after original exposure, as was the case with appellant. That she was allergic to the mixture is beyond dispute, and it becomes unnecessary, therefore, to discuss the question raised by counsel as to causation, or to determine whether appellant should be denied recovery on an independent basis due to variance between pleading and proof, she having relied solely on the contention that the lotion was dangerous, whereas the proof showed that a mixture of the lotion and the fixative was the cause of her difficulty.

Appellant appeared to be sensitive to the mixture much the same as some people respond to strawberries,—a commodity honored so frequently by the authorities in illustrating difference in liability to the allergic in contrast to the normal individual. We believe, that under the facts of this case, the trial judge strained neither common sense nor realism in concluding that appellant's ailment, being the result of an allergy, was not compensable as a matter of law. We are sympathetic with appellant and her misfortune, but cannot require the merchant to assume the role of absolute insurer against physiological idiosyncracy. To do so also would invest the elusive ordinary prudent man with a qual-

ity of foreseeability that would take him out of character completely. Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an unforeseeable happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade.

Counsel for appellant very ably urged that there was sufficient evidence to reach the jury on the question of negligence. Examination of the authorities requires that we differ, and in doing so we believe that there was no evidence to go to the jury on the question of the reasonable foreseeability of danger and harm to the normal person contemplated by the law. Most of the cases cited deal primarily with situations where a defect or danger was established, or where the facts showed a reasonable foreseeability that the normal person would be injured by use of a product. *Gerkin* v. *Brown & Sehler Co.*, 177 Mich. 45, 143 N. W. 48, 48 L. R. A., N. S., 224, and the *Zirpola* case, supra, were urged as authorities allowing recovery where danger and injury were applicable to the few as opposed to the public generally. In the former case, danger to the few was a matter of knowledge with the president of the manufacturer, and in the latter the evidence showed the product in fact to be poisonous. So far as they sanction recovery by an unanticipated few whose sensitivities or allergies are not reasonably foreseeable, we cannot accept them. Rather we must adhere to the philosophy enunciated by the cases reflected in respondent's citations[1] and which was put so aptly by Dean Prosser in his work on Torts, p. 679, to the effect that:

---

[1]*Stanton* v. *Sears Roebuck & Co.*, 312 Ill. App. 496, 38 N. E. 2d 801; *Ross* v. *Porteous, Mitchell & Braun Co.*, 136 Me. 118, 3 A. 2d 650; *Longo* v. *Touraine Stores*, 319 Mass. 727, 66 N. E. 2d 792; *Bradt* v. *Holloway*, 1922, 242 Mass. 446, 136 N. E. 254; *Barrett* v. *S. S. Kresge Co.*, 144 Pa. Super. 516, 19 A. 2d 502.

"The manufacturer is at least entitled to assume that the chattel will be put to a normal use by a normal user, and is not subject to liability where it would ordinarily be safe, but injury results from some unusual use or some personal idiosyncracy of the consumer." Citing *Walstrom Optical Co.* v. *Miller*, Tex. Civ. App., 1933, 59 S. W. 2d 895.

Any feeling of sympathy for appellant must yield to a common sense application of the rule of foreseeability such as is embraced within the above quotation of Dean Prosser. We are disposed to feel that respondent ■ fairly could not be held to have foreseen what in fact happened when the thioglycolate, itself harmless to appellant, in combination with the fixative, equally harmless, reacted on her because of an allergic skin, in such a way as to result in dermatitis.

WOLFE, C. J., and McDONOUGH and CROCKETT, J. J., concur.

WADE, Justice (concurring in part).

I concur on the ground that prior to plaintiff's injury there is no evidence that respondent had reason to believe that its product would be harmful even to the allergic. Such being the case, we are not called upon to determine the extent of a seller's duty to warn of dangers to the abnormal user of its product because under these facts it could not be reasonably foreseen that such dangers exist. I therefore express no opinion on that question.

It seems clear, however, that if respondent had reason to believe that one out of every thousand of its owners would be harmed as plaintiff was by the use of its products, then it could foresee, and therefore must reasonably anticipate that such would be the result. Many negligently maintained dangerous instrumentalities actually harm less than one person in a thousand of those who come in contact with them. To hold that such result could not be reasonably anticipated is to give to such expression a meaning not ordi-

narily intended and will lead to confusion rather than clear thinking. Whether the producer of a product owes its allergic customers a duty to warn them against its possible ill effects is another question which has nothing to do with reasonable anticipation or foreseeability and to confuse these two concepts does not add to clarity. It may be that to place the duty on the producer to warn the allergic of possible dangers would be to overburden business. The answer to that problem might be varied by the circumstances of the individual case but whatever the answer it should be determined on a consideration of the various elements which should have a bearing on the determination of public policy and not on the erroneous ground of non-foreseeability.