JUANITA BONOWSKI, appellant, v. REVLON, INCORPORATED, et al., appellees.

No. 49816.

(Reported in 100 N.W.2d 5)

DECEMBER 15, 1959.

Whicher & Davis, of Sioux City, for appellant.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellees.

PETERSON, J.—Plaintiff, age 57, returned from a vacation trip in California, in July 1957. During that vacation she had acquired a very decided sun tan. Shortly after her return she went to Warrior Beauty Salon in Sioux City to have them take care of her hair. Her sun tan was noticed by defendants and the beauty operator. The subject was raised as to her purchasing a Revlon sun tan, to preserve the tan. The question was under discussion as to whether she should purchase the bottle marked "Sun Bath, the Tanning Lotion, for Normal Skin" or the bottle marked "Sun Bath, the Tanning Lotion, for Sensitive Skin." Plaintiff stated she thought her skin was normal and purchased the bottle for normal skin.

On Saturday and Sunday, after the purchase, she applied the lotion on her face, arms, chest and legs. She was in her yard in the sunshine almost all afternoon Saturday in "halter and shorts." She made a second application on Sunday and was in the sun for about two hours.

On Monday she did not feel well, but went to work. During the day her face became filled with blotches, and they also appeared on her arms and waist. By Tuesday her skin condition was so bad and her pain was so severe she consulted a doctor. He was a specialist in dermatology. He immediately sent her to the hospital. She was in the hospital two weeks, at which time she was greatly improved. She was still confined to her home for another three weeks before she was able to work.

According to her petition her actual expenses in doctor, hospital, drug bills and loss of time amounted to $835. In her suit she claimed $2000 for pain and suffering.

The petition is in two counts. In the first count she sued the owners of the beauty salon and Revlon, Incorporated, on

the basis of implied warranty as to the product manufactured and sold. The second count was against Revlon, Incorporated, alone, and was based on alleged negligence in connection with the manufacture of a lotion which was detrimental to a user.

The only testimony offered by plaintiff in addition to her testimony was that of Dr. Herbert C. Leiter, her dermatologist. The defense of all defendants was that her damage was not the result of the lotion, but was caused because her skin was supersensitive and she was allergic to the combination of the application of the lotion and sunshine.

Doctor Leiter testified under cross-examination:

"Q. Doctor, do you remember * * * telling me it was your opinion that plaintiff, Mrs. Bonowski, was allergic to a combination of the Revlon lotion and exposure to the rays of the sun? A. My opinion is that the condition Mrs. Bonowski showed when I examined her was a combination of sunlight and the application of the particular preparation, yes.

"Q. * * * Doctor, it is true isn't it, and isn't it your opinion when this Revlon lotion is applied to the skin of a normal person it then has the effect of screening out some of the rays of the sun? A. Yes. * * * It is my opinion that this lady, when the Revlon lotion was applied to her skin, it did not have the usual expected reaction of filtering out the rays of the sun that would have been the normal reaction which you would expect on the usual skin of a normal person. But when it was applied to her skin, it is my opinion she had a distinctly different reaction, in fact the opposite reaction to the one intended.

"Q. She had a skin which was unusually susceptible to a combination of the Revlon lotion followed by exposure to the sun? A. Yes.

"Q. This would be a rare and unusual situation, wouldn't it? A. It is an unusual situation. * * * It isn't a usual occurrence. But I have never even heard of this occurring with the Revlon product.

"Q. It would be fair to say, wouldn't it Doctor, taking the over-all use of all of the exposures to sun that take place which are certainly many, many millions, that it would be a very unusual or rare occurrence, isn't that a fair statement? A. It is

144

an unusual and rare occurrence, yes, I subscribe to that. * * * Some of the rays of the sun themselves are an irritant. In this case it was the rays of the sun coming down on Mrs. Bonowski which caused this rash or sunburn. * * * I said allergy would be an abnormal reaction to exposure to certain things. It is true that this lady was exposed to the Revlon lotion. It is true that she did have a different reaction to it than you would normally expect in a normal person, so that she would have an abnormal reaction. * * * That indicates to me that in the constitution of her skin, the make-up of her skin itself, there was something unusual or abnormal which caused her to have this reaction."

The testimony of Dr. Louis Frank, who was called as a witness by defendants, and whose specialty also was dermatology, was in substance the same as that of Doctor Leiter.

When plaintiff rested, all defendants filed motion for directed verdict. The court sustained the motion as to Count I which included all defendants and was based on implied warranty. The court at that time did not sustain the motion as to Count II, pertaining to Revlon, Incorporated, only, and to the question of negligence.

Defendant Revlon, Incorporated, then presented its testimony. In addition to the doctor, they called as witness Mr. Mark D. Soroko of New York, who is a vice president of Revlon, Incorporated, and who had under his direction the responsibility for all products during formulation, testing, marketing, packaging, and labeling prior to marketing. He testified as to the extensive tests made as to "Sun Bath, the Tanning Lotion, for Normal Skin" starting in 1953 and extending through 1955 when it was placed on the market.

From the time it was placed on the market until the time of trial in January 1959 the company sold 5,304,272 bottles of the "Sun Bath, for Normal Skin." Mr. Soroko testified that from 1955 when it was placed on the market until the time of trial, the only complaint they had ever received was that of plaintiff.

At the close of all testimony motion was made for directed verdict on Count II as to defendant Revlon, Incorporated, which motion was sustained by the trial court. Plaintiff has appealed.

The question in the case is whether a dealer or manufacturer

is liable for damages caused to the user of a product, either on implied warranty or through negligence, when the injury is caused by an isolated user being allergic to the product.

In the case at bar there is no conflict in the evidence. Plaintiff had such a supersensitive skin that she was allergic to the combination of the use of Revlon "Sun Bath, the Tanning Lotion, for Normal Skin" and sunshine.

I. The specific question involved has not been previously considered by this court. Appellant cites three Iowa cases. They are not analogous to the case at bar.

In Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N.W. 382, 17 A. L. R. 649, the question involved was the condition of canned pork and beans eaten by some members of the Davis family. Some of the members of the family did not eat any of the canned beans and did not become sick. The members of the family who ate the pork and beans all became sick. One member died, and the cause of his death was diagnosed as ptomaine poisoning. The court held plaintiff established a prima-facie case which should be submitted to the jury. The case has no similarity to the instant case. No question of allergy is involved.

Brandenberg v. The Samuel Stores, 211 Iowa 1321, 235 N.W. 741, 77 A. L. R. 1161, was a case where plaintiff purchased a fur coat. Shortly after the purchase the fur started to shed, leaving large bare spots. The court held that under common-law implied warranty the contract of purchase should be canceled and the money paid by plaintiff returned to her. No question even remotely similar to the case at bar was involved.

The case of Anderson v. Tyler, 223 Iowa 1033, 274 N.W. 48, involved the drinking of a bottle of coca-cola in which a mouse was found in the bottle. Plaintiff became seriously ill. The case was submitted to the jury on the basis of negligence, which was affirmed. No element in the case sustains appellant's contention.

II. The overwhelming majority opinion as established in many states, and in the Federal Court, is that under the above circumstances neither the dealer nor the manufacturer is liable. Zager v. F. W. Woolworth Co., 30 Cal. App.2d 324, 86 P.2d 389; Graham v. Jordan Marsh Co., 319 Mass. 690, 67 N.E.2d 404; Worley v. Procter & Gamble Mfg. Co., 241 Mo. App. 1114,

253 S.W.2d 532; Merrill v. Beaute Vues Corp., 10 Cir., Okla., 235 F.2d 893; Barrett v. S. S. Kresge Co., 144 Pa. Super. 516, 19 A.2d 502; Ross v. Porteous, Mitchell & Braun Co., 136 Maine 118, 3 A.2d 650; Stanton v. Sears Roebuck & Co., 312 Ill. App. 496, 38 N.E.2d 801; Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 26 A. L. R.2d 958; Briggs v. National Industries, 92 Cal. App.2d 542, 207 P.2d 110; Walstrom Optical Co. v. Miller, Tex. Civ. App., 59 S.W.2d 895; Annotation, 26 A. L. R.2d 964–973; 46 Am. Jur., Sales, section 808, page 932; Prosser on Torts, page 679.

As a summary of the decisions in various jurisdictions, 26 A. L. R.2d, page 966, states:

"Although there are decisions to the contrary, generally it has been held that in an action by the buyer of a product against the seller for *breach of warranty* to recover damages for injuries resulting from the use of the product, there is no liability upon the seller, where the buyer was allergic or unusually susceptible to injury from the product.

"In an action by the buyer or user of a product, *based on negligence,* against the manufacturer, jobber, or seller for damages resulting after the use of the product, it has been held that there is no liability upon the manufacturer, jobber, or seller, where the buyer or user was allergic or unusually susceptible to injury from the product." (Emphasis ours.)

Bennett v. Pilot Products Co., supra, involved a case of dermatitis caused by plaintiff's allergic reaction to defendant's wave lotion and fixative. There was a showing in the evidence that approximately one woman in a thousand would be allergic to the combination of the ingredient and the fixative. The Supreme Court of Utah sustained a directed verdict for defendant and stated at page 477 of 120 Utah, page 527 of 235 P.2d, page 961 of 26 A. L. R.2d:

"Appellant appeared to be sensitive to the mixture much the same as some people respond to strawberries—a commodity honored so frequently by the authorities in illustrating difference in liability to the allergic in contrast to the normal individual. We believe, that under the facts of this case, the trial judge strained neither common sense nor realism in concluding that appellant's ailment, being the result of an allergy, was not com-

pensable as a matter of law. We are sympathetic with appellant and her misfortune, but cannot require the merchant to assume the role of absolute insurer against physiological idiosyncrasy. To do so also would invest the elusive ordinary prudent man with a quality of foreseeability that would take him out of character completely. Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an unforeseeable happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade."

In the case at bar the testimony is that one person (plaintiff) in five million was allergic to the combination of the sun tan and sunshine.

Merrill v. Beaute Vues Corp., supra, was a case in which plaintiff became ill, her face swollen and her vision permanently impaired as a result of a permanent wave solution. Defendant had received a few reports of other persons similarly affected through allergic reactions. The trial court sustained motion for judgment notwithstanding the verdict. The Tenth Circuit Court of Appeals affirmed, using the following language at page 897 of 235 F.2d:

"We therefore have the question as to whether a manufacturer who places a product on the market, knowing that some unknown few, not in an identifiable class which could be effectively warned, may suffer allergic reactions or other isolated injuries not common to the ordinary or normal person, must respond in damages. Although there is authority to the contrary, we think the prevailing and better rule is that the injured persons in such cases cannot prevail. The reason generally given for the rule is that the injury is caused by allergy or the unusual susceptibility of the person and not the product. The essence of these decisions is that a reasonable person could not foresee the purchaser's condition and could not anticipate the harmful consequences. In the case at bar, as in similar cases, the plaintiff herself did not know that a usually harmless product could cause injury to her optic nerve. Until after the filing of the complaint, the defendants had no knowledge of like injuries to others, and

then only two were reported. Under the circumstances, a warning would have been wholly ineffective."

The case of Stanton v. Sears Roebuck & Co., supra, pertained to damage caused plaintiff in the wearing of a rayon dress. The court said (page 501 of 312 Ill. App.): "It can hardly be said that a vendor thereof would be liable for a breach of an implied warranty solely because of the harmful effect due to a buyer's individual idiosyncrasy."

The case of Briggs v. National Industries, supra, involved the use of a "Helene Curtis Product." Verdict was directed for defendant. In affirming, the court said (page 546 of 92 Cal. App.2d): "There is nothing in the testimony indicating that many persons were susceptible to the product and might suffer damage through its use. In fact, from the record, plaintiff's complaint is the only instance in which injury from it was claimed."

III. The contention of appellant is sustained by only a minority number of cases. From the citations made by appellant and from our research we have only been able to find four cases where the position of plaintiff is somewhat, although not always strongly, sustained.

In case of Proctor & Gamble Mfg. Co. v. Superior Court, 124 Cal. App.2d 157, 268 P.2d 199, the decision leans toward appellant's position. The general statement is that if the product is dangerous to *some* persons, though few in number, the manufacturer is negligent if he fails to warn prospective customers.

Zirpola v. Adam Hat Stores, 122 N. J. L. 21, 4 A.2d 73, holds somewhat the same as the Proctor & Gamble case.

Wright v. Carter Products, Inc., 2 Cir., N. Y., 244 F.2d 53, involves the use of the product known as "Arrid." The trial court directed a verdict for defendant. The Second Circuit Court of Appeals reversed, holding it was a question for the jury as to whether the manufacturer should have foreseen possibility of serious injury to some potential user and warned of such injury.

The early case of Gerkin v. Brown & Sehler Co., 1913, 177 Mich. 45, 143 N.W. 48, 48 L. R. A., N. S., 224, involves injury to plaintiff from the dye in a fur coat. The trial court directed

for defendant, but the Michigan Supreme Court reversed holding the case should have been submitted to the jury.

As to other cases cited by appellant they are not similar to the instant case. In Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612, the question of an isolated case was not raised. In Braun v. Roux Distributing Co., Mo., 312 S.W.2d 758, the question of allergy was only touched upon incidentally in the instructions. It was not a specific issue. In Bianchi v. Denholm & McKay Co., 302 Mass. 469, 19 N.E.2d 697, 121 A. L. R. 460, the question of allergy was not involved in the case.

We will follow the majority rule and hold that neither the seller nor manufacturer is liable for breach of warranty or for negligence where an isolated buyer is allergic, or unusually susceptible, to the product.—Affirmed.

All JUSTICES concur.