## WILLIAM DAWALD v. ROCKET TRANSFER COMPANY AND ANOTHER.

109 N. W. (2d) 345.

May 26, 1961—No. 38,150.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and
*M. J. Coyne,* for appellant.

*Daniel B. Gallagher* and *Robert J. Sheran,* for respondent.

MURPHY, JUSTICE.

The Rocket Transfer Company appeals from an order of the district court denying its motion for judgment notwithstanding special verdict or for a new trial. The appeal derives from a negligence action in which the plaintiff, William Dawald, recovered a verdict against the appellant as damages for injuries sustained while assisting the appellant's truck driver in unloading a shipment of corrugated metal culverts. The appellant asserts that the record establishes that, as a matter of law, it was free from fault; that the plaintiff assumed the risk of injury to which he was exposed; and that the accident resulted from his contributory negligence.

It appears from the record that on the day before the accident appellant company left its trailer at the yard of the defendant Armco Drainage and Metal Products, Inc., for loading. The loading operation was wholly accomplished by Armco's employees. The trailer was a flatbed unit, 32 feet long and 8 feet wide. Armco placed two loads on the trailer. The upper load was destined for Waseca, and the lower load was to be delivered at St. James, Minnesota. The Waseca load consisted of eight culverts 18 feet in length and eight culverts 16 feet in length. On the bed of the trailer Armco placed four 24-inch culverts. In each of these was inserted an 18-inch culvert. Two wooden blocks were nailed to the bed of the truck to keep the culverts from rolling sideways. On top of the 24-inch culverts, Armco placed 2-inch by 6-inch spacer boards, one near the front and one near the back, at right angles to the length of the load. At the edge of these boards similar blocks were placed to keep the second row of culverts from rolling sideways and off the load. On top of the second row of culverts, two more boards and blocks were similarly placed to keep the third row from rolling off. Between the third and fourth rows, or tiers, no boards were placed since the fourth or top row of culverts rested in the grooves formed by the third row. Over the entire load three heavy logging chains were placed—one in the back, one in the middle, and one a few feet from the front. These were secured to the bed of the trailer on one side—designated as the "right" side—ran up and over the top of the load, and were fastened tightly by means of rings and chain tighteners to the truck on the other or "left" side.

On the morning of June 6, 1956, appellant's employee drove a tractor to the Armco yard and hitched it to the loaded trailer. Before moving the load he fastened the three logging chains. He then proceeded to the Waseca highway building, where the top half of the load was to be delivered. When he arrived at the highway department yard, he was directed by the plaintiff to the place where the culverts were to be unloaded. After removing the center chain from the load, the driver removed one of the blocks from the spacer or dividing board separating the upper tiers. He then proceeded to loosen the forward chain. At the same time the plaintiff proceeded to unhitch the remaining chain at the rear of the load. There was evidence from which the jury could find that the driver completed loosening the forward chain before the plaintiff had finished and then proceeded to the front of the truck, intending to go around to the other side. As the driver was walking at or near the front of the tractor, the two top rows of culverts began to fall, at which time he shouted a warning to the plaintiff. The plaintiff testified that after he loosened the rear chain he heard the rumble of rolling culverts, heard the driver yell, and started to run—all at the same time—but was unable to avoid being hit by one of the falling culverts.

The jury found by special verdict that there was no negligence on the part of the Armco company in loading the culverts which proximately contributed to the plaintiff's injuries. They found that the negligence of appellant's driver, Floyd Gerdin, proximately contributed to cause the plaintiff's injuries. They also found that the plaintiff was not contributorily negligent and did not assume the risk of the injury at the time and place of the accident.

In considering appellant's contention that the record establishes as a matter of law that its employee was free of negligence, certain facts which the jury could have found should be considered. At the time of the accident the plaintiff was a man 63 years of age who had been employed by the Waseca County Highway Department in the capacities of a mechanic and shop foreman for at least a period of 20 years. During that time he had assisted in the unloading of culverts whenever they were delivered to the highway department property. He testified that in his previous experience he had encountered no

danger or risks in this work. On two prior occasions culverts had fallen from a truck which was being unloaded before the chains had been removed. He testified:

"* * * there was a couple of times after we had went around the truck and pulled the chains off that one or two had fell off of the top tier."

It is unnecessary for us to speculate as to how the culverts were maintained in equilibrium on previous occasions. The record fully establishes that on the basis of previous experience the plaintiff would not ordinarily expect that the accident would occur in the way it did.

On the record the jury could find that, while appellant's truck driver was loosening the binder chain at the forepart of the load, he was aware of the fact that the plaintiff was engaged in doing the same thing at the rear part of the trailer. The truck driver testified that the normal procedure was to see that both chains were loose before moving to the other side of the truck. Moreover, it was undisputed that Gerdin was aware of the fact that, as to this particular load, there was nothing to prevent the culverts from falling once the binder chains were released. There is this testimony from the driver, Gerdin:

"Q. Now, in other words, you were aware to a certainty that once these chains were unloosened on the left side of the load that the load of culverts would roll off, is that correct?

"A. Yes.

"Q. And you were aware, also, that at the same time that you were taking one of the chains off, Mr. Dawald was taking the other chain off?

"A. Not until he had it snapped loose and off, I didn't realize he had it loose.

* * * * *

"Q. Isn't it correct that the only other possible blocking point for the load on the left side is the block and the chains, and if the block is out, and the chains are unloosed, that the load will roll off the left side, isn't that correct?

"A. Yes, sure.

"Q. In this case it is true that you had taken the block off the left side?

"A. Yes.

"Q. And there were no other blocks on that side?

"A. No.

"Q. So isn't it also, then, correct to say that when both of these chains were unloosed that this load of culverts would roll off?

"A. Yes.

"Q. Onto the ground?

"A. Yes.

"Q. Immediately, as soon as they were unloosed?

"A. Yes."

As further bearing upon the foreseeability of the accident, there is this testimony from Gerdin:

"Q. But, I mean, isn't it true, then, that you recognized in your own mind that a peril existed there as far as the culverts when the chains are unloosed, and when the block is out of the load?

\*　　\*　　\*　　\*　　\*

"A. Yes.

\*　　\*　　\*　　\*　　\*

"Q. Now, had there been occasions where the pipe had come off before the chains were removed?

"A. Oh, yes, I have had it happen."

There was also evidence from which the jury could find that the truck driver was facing in a direction so that he was unable to see plaintiff who was assisting in the unloading operation. At this time they were working together removing the binder chains. The truck driver completed his part of the work first and, without waiting to observe or inquire as to the plaintiff's situation, he released the chains supporting the front part of the load. The jury obviously found that appellant's driver failed to warn the plaintiff of danger which was readily apparent to the driver, and that conclusion is supported, we think, by the record. Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. (2d) 873. The plaintiff failed to receive a warning until it was too late for him to seek a place of safety.

■ Appellant relies on certain principles of law which are well stated

in Blomberg v. Trupukka, 210 Minn. 523, 526, 299 N. W. 11, 13, to the effect that:

"* * * An act which exposes another to risk of injury only by his failure to conform to those rules of conduct for his own safety with which he might reasonably be expected to comply does not violate the standards of due care. A party has a right to assume that others will observe as a minimum the operation of well known natural laws. * * * The operation of the law of gravity is a matter of such common knowledge that all persons of ordinary intelligence and judgment, even if they are illiterate, are required to take notice of it. * * * There is no necessity to warn against the obvious."

In considering the relationships of the parties at the time and place of the accident as they bear upon the question of liability, it should be noted that the jury was correctly instructed that the conduct of appellant's employee was to be measured by that degree of care which one of ordinary intelligence and prudence might reasonably be expected to exercise in the particular circumstances. It was clear from the testimony of the truck driver that it was foreseeable that the culverts would fall immediately upon loosening of the binder chains. There is no dispute as to the principle of law expressed in the Blomberg case to the effect that there was no duty to warn the plaintiff as to the natural workings of the law of gravity. It does not follow from this rule, however, that appellant's employee did not have a duty under the circumstances to warn the plaintiff that his unanticipated act would permit the law of gravity to go into operation. On the record we think that the jury could well have found that a reasonably prudent person in the place of the truck driver, having the responsibility of unloading the culverts, would wait until the plaintiff had completed his part of the work before he released the chains supporting the forepart of the load; and that the reasonably prudent person would not have released those supports without warning the plaintiff so as to give him an opportunity to protect himself.

■ Where, as under the circumstances in this case, persons are engaged in the same work under conditions where the safety of one depends upon the care, skill, and prudence of another, there is a duty

of each to the other to exercise such skill and care as is ordinarily employed by prudent men under similar circumstances.[1] Griffiths v. Wolfram, 22 Minn. 185; 13 Dunnell, Dig. (3 ed.) § 6975, and cases cited therein. We are satisfied from the record that all of the elements necessary to create liability on the part of appellant have been established. In view of the truck driver's knowledge of the danger that the culverts might fall from this particular load, it was his duty to maintain the supports until the plaintiff had an opportunity to find a place of safety; the truck driver had the further duty under the circumstances to warn the plaintiff of the dangerous condition created by his act. We are of the further view that under the particular circumstances in this case the plaintiff had a right to expect that the truck driver would not leave him exposed to the hazard of the falling culverts without sufficient warning.

It is unnecessary for us to discuss the remaining issues raised by the appeal. The questions of assumption of risk and contributory negligence of the plaintiff were fully submitted to the jury by proper instructions and have been resolved in favor of the plaintiff.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

---

[1] There is no issue here as to the applicability of the fellow-servant rule, nor is the claim made that the plaintiff's exclusive right to recover is under the Workmen's Compensation Act.