LeVern HUNGERHOLT, Plaintiff,

v.

LAND O'LAKES CREAMERIES, INC., a corporation, Defendant.

Civ. No. 4–61–218.

United States District Court
D. Minnesota,
Fourth Division.

Sept. 11, 1962.

Walter E. Riordan, Minneapolis, Minn., for plaintiff.

Charles A. Bassford and Nathan A. Cobb, Minneapolis, Minn., for defendant.

DONOVAN, Judge.

Plaintiff commenced this tort action against defendant to recover damages for injury, disability and expense attributed to the latter's negligence. Diversity of citizenship and the amount sued for satisfy all jurisdictional prerequisites. Minnesota substantive law controls.[1]

Tried to the court and jury, a verdict in the sum of $90,400.00 was awarded plaintiff.

Defendant moved for judgment in its favor, or, if that be denied, then as an alternative for a new trial upon the following grounds:

1. The verdict is contrary to the evidence.

2. The verdict is contrary to law.

3. Excessive damages.

4. Errors of law.

The evidence and law will be discussed in the above order.

1. Is the verdict contrary to the evidence?

The factual basis of this controversy will be summarized. Plaintiff at trial was 33 years of age. He had the equivalent of a high school education. He was born and raised on a farm at Peterson, Minnesota. Called to service in the armed forces, he was discharged after nine months and placed on inactive service. A year later he engaged in the trucking business with his brother.

Plaintiff testified there was no history or family background of allergy or allergic antecedent problems. His work as a trucker required driving a truck loaded with cattle to St. Paul. This accomplished he would load his truck with feed and fertilizer required for delivery upon the return trip along a route that included Winona, Hart, Rushford and Houston. The loading for the return trip was at Land O'Lakes feed dock and fertilizer plant. Plaintiff would first load feed and then fill the remaining space with fertilizer. This fertilizer is hereinafter referred to as 5-20-20, except where otherwise designated in quoted testimony. He knew nothing of the chemistry or component parts that went to make up the 5-20-20 which was packaged by defendant in paper bags for handling and delivery.

On September 8, 1958, while plaintiff was loading bags of 5-20-20, he picked up one, which, unknown to him, was torn. Some of the contents of the bag fell into one of his boots which was open at the top.[2] The defective bag and contents were in the sole possession, control and management of defendant, and, had the bag not been torn, nothing would have happened in the ordinary course of things. No immediate discomfort was noted at the time of the incident, but an hour later, plaintiff felt a burning sensation in his right ankle. He kept working, however, until the load was complete. The day was warm. He was perspiring. Plaintiff testified that he got his orders and (to quote him) "jumped in the truck * * * emptied my boot out and * * went home." Upon arrival home, he noticed a red spot on his right ankle. He continued working for five weeks thereafter. Testifying, he said that the red spot spread from day to day to other parts of his body "[until] my face and legs and everything blew up. The legs were as big as stove pipes, and my ears were twice as big as they were, and my nose and my hands. I lost my finger nails, toe nails. * * * My clothes would stick to me. I * * * started to get sick."

Home treatment was then dispensed with and he was taken to a clinic at Rochester, Minnesota, where he was attended by " * * * Dr. Brunsting * * * head of the skin department

---

1. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

2. Plaintiff described them as "engineer boots, open about two inches at the top. * * * You just slip into them."

* * * [who] gave me some prescriptions" and advised baths in water with oatmeal added. After four or five weeks of this, he improved. He then returned to his work as a trucker until March 1959 when water blisters developed on his body. He then went to Dr. John J. Sevenants, a specialist in dermatology, who diagnosed his condition as "extremely severe dermatitis." Dr. Sevenants attended plaintiff until June 27, 1961, at which time plaintiff was discharged. Later the dermatitis flared up again. Dr. Sevenants pronounced plaintiff disabled and incapable of performing his employment as a trucker because of the incident of September 8, 1958.

Testifying in support of his conclusion, and as plaintiff's attending physician, Dr. Sevenants was of the opinion "that some of the substances in the fertilizer are primary irritants that resulted in an ulcer and dermatitis * * * and that he later became sensitized or developed an allergic response to those chemicals or to the products which were formed in the tissues. * * * Friction * * * also [causes] a reaction from a primary irritant * * * [and] because of its chemical nature, produces damage on contact with the skin, that is, it is not an allergic reaction * * *. [This opinion is based on] the history, the appearance of the lesions, and upon my training and knowledge of fertilizer and my experience * * *" concluded Dr. Sevenants.

Dr. Isadore Fisher testified for defendant and agreed the treatment given plaintiff was the accepted one for an atopic situation and that following such treatment the plaintiff should be capable of (to quote Dr. Fisher) "carrying on a gainful occupation. * * * I would say to Mr. Hungerholt: You are an allergic individual; there are many people with a dermatitis as severe or more severe than yours who are carrying on a gainful occupation in many fields of endeavor."

The testimony pertaining to the chemical contents of 5–20–20 discloses the presence of anhydrous ammonia, ammonium nitrates, calcium, triple superphosphate and sulfuric acid.[3]

There was similarity in the contentions of the parties to some extent. For example, plaintiff claimed:

"That the defendant knew, or in the exercise of reasonable care ought to have known, that its fertilizer contained primary irritants and was deleterious and harmful to the human body, skin and health, notwithstanding which defendant negligently failed to warn the plaintiff by means of a label on its bag or container or to warn by other reasonable means of the danger and harm to which he was exposed while lifting, loading and transporting its fertilizer;

"That defendant negligently failed and omitted to provide plaintiff with the knowledge as to what would be reasonably safe and sufficient wearing apparel and protective equipment and appliances to protect him from being harmed as he was by exposure to the primary irritants contained in defendant's fertilizer;

"That defendant negligently and carelessly packaged its fertilizer so that in the ordinary handling for transportation thereof said packages would break open, causing their handler thereof, and particularly plaintiff, to come in contact with the fertilizer."

Opposing plaintiff's claims, defendant states its theory and contentions in these words:

"It is the contention of the defendant that as a practical matter and in the experience of the industry it has been demonstrated that commercial fertilizer, and 5–20–20 in particular, is in no way injurious or harmful to the skin. Defendant claims that a very large number of persons come

3. Exhibit 15.

in contact with fertilizer in one way and another, by working in the various fertilizer plants in the country, in transporting it, and in using it on the farm, and that cases of contact dermatitis from fertilizer are unknown.

"Defendant further contends that 5–20–20 fertilizer is not a primary irritant. Defendant contends that if it were a primary irritant it would have showed up among the thousands of persons who come into close contact with it on their skin. Defendant further contends that it had certain patch tests made of a group of individuals and that those patch tests themselves showed that this substance is not a primary irritant.

"Defendant accordingly contends that the difficulty experienced by plaintiff did not come from and could not have come from the 5–20–20 fertilizer which he was hauling. Defendant further contends that plaintiff's difficulty either came from some completely other source or else that plaintiff's difficulty arose from an allergy or idiosyncrasy of his."

The fact problem for the jury was to consider all of the foregoing and determine from the evidence whether the defective condition of the paper bag, which precipitated a part of its chemically composed contents into the boot of plaintiff was or was not solely due to the negligence of the defendant, and, if it were, whether this proximately caused plaintiff's damage.

The questions of negligence, contributory negligence, proximate cause and damage are questions of fact for decision by the jury. The jury having found in favor of the plaintiff, the trial court must accept as true all facts which the evidence reasonably tended to prove. It must be assumed that the jury resolved all conflicts and inferences in favor of the plaintiff. It is only where all or substantially all of the evidence is on one side that a directed verdict or judgment notwithstanding the verdict is justified.[4] The evidence was substantial as distinguished from a mere scintilla of evidence.

The transcript of 938 pages reflects thoroughness of experienced counsel in preparation for trial and presentation of the evidence. As I view the transscribed record, the questions of cause and effect were wholly within the province of the triers of the facts. The court is precluded from substituting itself for the jury despite the persuasiveness of counsel in allocating blame entirely to allergy as opposed to accident and injury. The jury having found for plaintiff by its verdict that defendant's negligence was the proximate cause of plaintiff's damage, the court finds the verdict is supported by the evidence.

2. Is the verdict contrary to law?

Defendant's alternative motion was submitted for decision following oral argument.[5] Defendant urged the application of Merrill as a case in point. Plaintiff argued that Pietrus controlled the instant case. Cases of the forum were found that had been tried to court

4. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 443, 444; Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257, 259, 19 A.L.R.2d 1248; Dealer's Transport Co. v. Werner Transp. Co., 8 Cir., 203 F. 2d 549, 552; Ford Motor Company v. Zahn, 8 Cir., 265 F.2d 729, 730; Lindgren v. Voge, 260 Minn. 262, 265, 109 N.W.2d 754; Trimbo v. Minnesota Valley Natural Gas Company, 260 Minn. 386, 399, 110 N.W.2d 168.

5. Defendant cites:
 Merrill v. Beaute Vues Corporation, 10 Cir., 235 F.2d 893; Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559; Briggs v. National Industries, 92 Cal.App.2d 542, 207 P.2d 110.
 Plaintiff cites:
 Pietrus v. J. R. Watkins Co., 229 Minn. 179, 38 N.W.2d 799; Krueger v. Knutson, 261 Minn. 144, 111 N.W.2d 526, 532, on duty to warn; Restatement of Torts, Sec. 395, cited by Mr. Justice Jackson, in Dalehite v. United States, 346 U.S. 15, 52, 73 S.Ct. 956, 97 L.Ed. 1427; Carter v. Yardley & Co., supra.

and jury in master and servant actions where damage was attributed to poisonous gas or dust. In such cases negligence and proximate cause were relied on by the plaintiffs and contributory negligence and assumption of risk were raised by defendants.[6] Here the defendant, in addition to urging its freedom from negligence, claims that the probability of injury was unforeseen by it.[7]

In Merrill the court relieved the defendant from liability on the theory that "a reasonable person could not foresee the purchaser's condition and could not anticipate the harmful consequences." The instant case is distinguished as to allergy and idiosyncrasy in that there is nothing to suggest plaintiff was anything other than normal.

Resort to Merrill, 235 F.2d at pages 898, 899, 900 and Judge Murrah's opinion concurring specially, is revealing in the sense that he discusses two trends of judicial thought on liability in the type of case with which we are here concerned. One was adhered to in Merrill. The reason given by Judge Murrah is, as follows:

"The trial court's judgment n. o. v. is based squarely on the conclusion that the appellant was an 'unusually susceptible individual * * * not a member of a class expected to be affected by the use of the product.' If I could agree with this conclusion, I should have no difficulty agreeing to the opinion of the court * * *. To borrow the words of Mr. Justice Wade specially concurring in Bennett v. Pilot Products Co., 120 Utah 474, 235 P.2d 525, 528, 26 A.L.R. 2d 958, 962, 'Whether the producer

of a product owes its allergic customers a duty to warn them against its possible ill effects is * * * [a] question which has nothing to do with reasonable anticipation or foreseeability and to confuse these two concepts does not add to clarity.' See also Green, Rationale of Proximate Cause, § 3, p. 11.

\* \* \* \* \* \*

"But where the proof shows that 'some', or even a 'small proportion', will be injuriously affected by the use of a manufacturer's product, some courts have recognized the duty to warn of the known, or imputed dangers at the risk of liability. \* \*

\* \* \* \* \* \*

"Even before allergies were recognized in science as a definite class, some of the courts were saying that 'When the fact is once established and demonstrated by experience that a certain commodity apparently harmless contains concealed dangers, and when distributed to the public through the channels of trade and used for the purposes for which it was made and sold is sure to cause suffering to, and injure the health of, some innocent purchaser, even though the percentage of those injured be not large, a duty arises to and a responsibility rests upon the manufacturer and dealer with knowledge to the extent, at least, of warning the ignorant consumer or user of the existence of the hidden danger.' Gerkin v. Brown & Sehler Co., 177 Mich. 45, 143 N.W. 48, 53, 48 L.R.A.,N.S., 224. See also Arnold

---

6. Clark v. Banner Grain Co., 195 Minn. 44, 261 N.W. 596; Symons v. Great Northern Ry. Co., 208 Minn. 240, 293 N.W. 303; Applequist v. Oliver Iron Mining Co., 209 Minn. 230, 296 N.W. 13; Trimbo v. Minnesota Valley Natural Gas Company, supra note 4.

Counsel have cited no Minnesota case squarely in point. Search by the court has revealed none. It is noteworthy, however, that plaintiff, although his complaint, theory of trial and proof adhere to the rule expressed by Judge Murrah

in Merrill, nonetheless relies on Pietrus.

7. However, as to what probabilities defendant should contemplate to reasonably guard against, see Dawald v. Rocket Transfer Company, 260 Minn. 210, 109 N.W.2d 345, and the oft cited case of Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N.W. 640, and cited with approval in Ford Motor Company v. Zahn, 8 Cir., 265 F.2d 729, 733, on the related question of proximate cause.

v. May Department Stores, 337 Mo. 727, 85 S.W.2d 748.

"I would apply that rule to our facts and submit to the jury the questions: (1) whether from the evidence, the plaintiff was unusually susceptible to some of the ingredients of the seller's product; (2) if so, did the allergic plaintiff know of her unusual susceptibility; (3) if not, did the manufacturer know or have reason to know that some of the ingredients of its product were harmful to the unusually susceptible; and (4) if so, did it appropriately warn of such potential dangers. Since, however, the case was neither tried nor presented on that theory, I must be content to concur in the result."

The trial of the instant case is closer to "that theory" mentioned last by Judge Murrah. In Pietrus the Minnesota court has indicated a more liberal and humane approach to this type of litigation than that found in Merrill. The Minnesota court, when confronted by a case similar to the instant one, might well find support for such an approach in the reasoning set forth in Christianson, supra, wherein Mr. Justice Mitchell stated:

"The doctrine contended for by counsel would establish practically the same rule of damages resulting from tort as is applied to damages resulting from breach of contract, under the familiar doctrine of Hadley v. Baxendale, 9 Exch. 341. This mode of stating the law is misleading, if not positively inaccurate. It confounds and mixes the definition of 'negligence' with that of 'proximate cause.' * * * Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and

for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

We are here confronted with a factual cause of traumatic dermatitis, arising out of an accident involving a broken container of 5–20–20, which was shown to be under defendant's management and sole control. This original negligent act of defendant resulted in the contents of the bag falling into plaintiff's boot, "with consequences which follow[ed] in unbroken sequence, without an intervening efficient cause" from said original negligent act.

Absent a controlling decision by the Supreme Court of Minnesota, the trial court must determine what, it believes, the Minnesota court would hold if called upon to decide the question on trial.[8] It is my opinion that a more liberal rule than that of Merrill will be adopted in Minnesota.

3. Are the damages excessive?

The court takes judicial notice that the purchasing power of money has diminished. The amount of the verdict must be viewed in the light of what it is capable of purchasing.[9] The record does not support the possibility of passion and prejudice. True, this is a large verdict, but attempts by courts to reduce verdicts by a threat of a new trial can well be misleading especially where the court substitutes its ideas of economics for that considered by the jury. The Minnesota court has stated that "There cannot be a standard verdict."[10] I am, therefore, unable to say the verdict is excessive.

4. Does the record disclose errors of law?

Requests to charge the jury submitted by each party were thoroughly discussed and considered by court and counsel in

8. Homolla v. Gluck, 8 Cir., 248 F.2d 731; Burkhardt v. Bates, 8 Cir., 296 F.2d 315.

9. Kauppi v. Northern Pacific Ry. Co., 235 Minn. 104, 49 N.W.2d 670; Barnes v. Smith, 10 Cir., 305 F.2d 226.

10. Crouch v. Chicago Great Western R. Co., 172 Minn. 447, 216 N.W. 234.

chambers. All requests were ruled upon in the absence of the jury. Counsel were advised by the court, before argument, of the instructions that would be given to the jury.

The motion for judgment notwithstanding the verdict must be denied.

It is so ordered.

 Turning now to the alternative motion, it is well-established law that a motion for a new trial should be granted cautiously and sparingly and only in the furtherance of substantial justice.[11] The burden of demonstrating error is a heavy one.[12]

The court recalls no case tried by it where experienced counsel in the instant case have been excelled in thoroughness of representation of clients or lawyer-like conduct and cooperation throughout trial. A verdict for defendant, if returned, would stand as free from error. The verdict was for plaintiff. The present case is novel in the sense of lack of Minnesota precedents. Absent Minnesota authority, the trial court must indulge in prediction on a doubtful question of law.

"Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion."[13] Frequently, to attempt to explain understandable language is merely to confuse. If the instructions given cover the case and are correct, that is enough.[14]

All of the assigned errors, if such exist, have been considered and found harmless and free from prejudice.

The alternative motion for a new trial is denied.

It is so ordered.

Defendant is allowed an exception.

11. Leuba v. Bailey, 251 Minn. 193, 207, 88 N.W.2d 73, 83; Hanson v. Ford Motor Company, 8 Cir., 278 F.2d 586, 589, 590, 596.

12. National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741; W. Hodgman & Sons, Inc. v. Motis, 8 Cir., 268 F.2d 82, 86.

13. United States v. Bayer, 331 U.S. 532, 536, 67 S.Ct. 1394, 91 L.Ed. 1654.

14. Railway Company v. McCarthy, 96 U.S. 258, 265–266, 24 L.Ed. 693; Guon v. United States, 8 Cir., 285 F.2d 140, 142; Compare: Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447, 451.